IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-74,445






JOHNNY PAUL PENRY, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM POLK COUNTY






 Price, J., delivered the opinion of the Court, in which Meyers, Womack,
Johnson, and Holcomb, JJ., joined. Keller, P.J., filed a dissenting opinion in which
Cochran, J., joined. Cochran, J., filed a dissenting opinion, in which Keller, P.J., and
Keasler and Hervey, JJ., joined. 


O P I N I O N




 The appellant was convicted of capital murder. His sentence was reversed twice
by the United States Supreme Court because the jury instructions failed to provide an
adequate vehicle to give effect to the appellant's evidence of mental retardation. During
the most recent retrial, the trial court submitted instructions and a mitigation special issue
that asked the jury to decide whether the appellant is mentally retarded, and if not, to
"consider whether any other mitigating circumstance or circumstances exist as defined
herein."

 In his fifteenth point of error, the appellant complains that the instruction, as given,
precluded the jury's giving effect to the appellant's evidence of mental impairment that
might not amount to mental retardation. Because we conclude that there is a reasonable
likelihood that the jury was precluded from considering this circumstance as mitigating
outside of showing mental retardation, we will reverse and remand for a new trial on
punishment.

I. Procedural History


 The appellant was convicted of the 1979 capital murder of Pamela Carpenter and
sentenced to death. We affirmed the conviction and sentence. (1) The United States
Supreme Court reversed the appellant's sentence on the basis that the jury was not
provided with a vehicle for expressing its reasoned moral response to the appellant's
mitigating evidence in rendering its sentencing decision. (2) On retrial, the appellant was
convicted and sentenced to death again. (3) We affirmed the appellant's second conviction
and sentence. (4) The United States Supreme Court then reversed the appellant's sentence
on the basis that the trial court's nullification instruction was internally inconsistent and
still did not provide the jury with a vehicle to give effect to its reasoned moral response to
the appellant's mitigating evidence. (5)

 The appellant was retried on punishment only, and, pursuant to the jury's answers
to the special issues, the trial court again sentenced the appellant to death.

II. Relevant Facts


 After hearing evidence about the appellant's mental impairment, childhood abuse,
home life, educational background, and the circumstances of the offense, the jury in this
case was instructed to consider four special issues. (6) The trial court submitted the first
three special issues in accordance with Code of Criminal Procedure Article 37.0711. (7) In
the first special issue, the jury was asked whether the appellant acted deliberately when he
caused the victim's death. In the second special issue, the jury was asked whether there is
a probability that the appellant would commit criminal acts of violence that would
constitute a continuing threat to society. In the third special issue, the jury was asked
whether the appellant's conduct in killing the victim was unreasonable in response to
provocation, if any, by the victim. The jury answered these three issues yes.

 The trial court submitted the current statutory mitigation issue from Article
37.0711 as the fourth special issue. (8) In the fourth special issue, the jury was asked
whether, taking into consideration all the evidence, including the circumstances of the
offense, the appellant's character and background, and the personal moral culpability of
the appellant, there is a sufficient mitigating circumstance or circumstances to warrant a
life sentence instead of death.

 In its instructions regarding the fourth special issue, the trial court told the jury that
neither party had the burden of proof on the fourth special issue and that the jury should
"consider mitigating evidence, if any, that a juror might regard as reducing the
[appellant's] moral blameworthiness." The trial court then told the jury that mental
retardation is a mitigating factor as a matter of law, and it defined mental retardation. The
jury was instructed that, if it believed that the appellant is mentally retarded, it should
answer the fourth special issue yes. If the jury found that the appellant was not mentally
retarded, the jury was instructed to "follow the Court's instructions previously given
herein concerning the appropriate answer to Special Issue No. 4 and consider whether any
other mitigating circumstance or circumstances exist as defined herein." (9)

 The appellant made several objections to the jury charge, including an objection
that, if the jury concluded that the appellant was not mentally retarded, the jury could then
consider as mitigating evidence only circumstances other than mental impairment and
mental deficiencies. 

 The trial court overruled the appellant's objection. During its deliberations, the
jury answered the fourth special issue no.

III. Parties' Arguments


 The appellant complains that the jury was foreclosed from considering his
evidence of mental impairment that did not establish mental retardation. The jury was
instructed, if it found that the appellant was not mentally retarded, to "consider whether
any other mitigating circumstance or circumstances exist as defined herein." He argues
that this specific language created a reasonable likelihood that the jury applied the
instruction in such a way that prevented the appropriate consideration of the appellant's
constitutionally relevant mitigating evidence of mental impairment that did not rise to the
level of establishing mental retardation.

 The State argues that the statutory definition of mitigating evidence, when read in
tandem with the instruction to consider all evidence when deciding whether sufficient
mitigating circumstances exist to warrant a life sentence, was sufficient. For this
proposition, the State cites Shannon v. State, (10) in which we held that the statutory
definition of mitigating evidence as laid out in Code of Criminal Procedure Article
37.071 does not unconstitutionally narrow a jury's consideration of mitigating evidence. 
But Shannon deals with the special issues generally and not the specific facts of this case.

IV. Law and Analysis


 A jury in a capital case must be given a vehicle to give effect to the appellant's
constitutionally relevant mitigating evidence. (11) The states have discretion to structure the
jury's consideration of mitigating evidence, but it "may not cut off in an absolute manner
the presentation of mitigating evidence, either by statute or judicial instruction, or by
limiting the inquiries to which it is relevant so severely that the evidence could never be
part of the sentencing decision at all." (12)

 A capital defendant cannot establish a constitutional violation simply by
demonstrating that an allegedly erroneous jury instruction could have or might have
affected some hypothetical jury. The Supreme Court explained in Boyde v. California
that a defendant must show that 

 there is a reasonable likelihood that the jury has applied the challenged
instruction in a way that prevents the consideration of constitutionally
relevant evidence. Although a defendant need not establish that the jury
was more likely than not to have been impermissibly inhibited by the
instruction, a capital sentencing proceeding is not inconsistent with the
Eighth Amendment if there is only a possibility of such an inhibition. This
"reasonable likelihood" standard, we think, better accommodates the
concerns of finality and accuracy than does a standard which makes the
inquiry dependent on how a single hypothetical "reasonable" juror could or
might have interpreted the instruction. . . . Jurors do not sit in solitary
isolation booths parsing instructions for subtle shades of meaning in the
same way that lawyers might. Differences among them in interpretation of
instructions may be thrashed out in the deliberative process, with
commonsense understanding of the instructions in the light of all that has
taken place at the trial likely to prevail over technical hairsplitting. (13)

In Boyde, the Supreme Court considered whether California's "unadorned" mitigating
factor (k) permitted the jury to give effect to the defendant's evidence of his background
and character. (14) This mitigating factor asked California juries to determine whether "Any other circumstance which extenuates the gravity of the crime even though it is not a legal
excuse for the crime." (15) Applying the standard above to the unadorned factor, the
Supreme Court held that the defendant 

 had an opportunity through factor (k) to argue that his background and
character "extenuated" or "excused" the seriousness of the crime, and we
see no reason to believe that reasonable jurors would resist the view, "long
held by society," that in an appropriate case such evidence would counsel
imposition of a sentence less than death. The instruction did not, as
petitioner seems to suggest, limit the jury's consideration to "any other
circumstance of the crime which extenuates the gravity of the crime." The
jury was directed to consider any other circumstance that might excuse the
crime, which certainly includes a defendant's background and character. (16)

 At first glance, factor (k) in Boyde seems very similar to the instruction given in
the appellant's case. Here, the jury was instructed to consider any other mitigating
circumstance or circumstances when answering the fourth special issue after determining
that the appellant was not mentally retarded. This situation is different from Boyde
because the instruction to consider "any other circumstance or circumstances" excludes
what the jury had already considered: mental impairment that did not rise to the level of
mental retardation. This circumstance, even if the jury concluded that the appellant is not
mentally retarded, is the kind of double-edged circumstance that the jury should be able to
consider within the context of the mitigation special issue. (17)

 The parties' arguments to the jury did not clear up this confusion. The State told
the jury

 If you don't believe he's mentally retarded, your job is not complete on that
fourth special issue. As we discussed, you still have to look at the other
evidence in this case and decide whether there are any other kinds of
evidence in this case there that you believe reduces this man's moral
culpability for commission of these crimes, whether it's child abuse, mental
illness, whatever."

In the context of victim-impact evidence, the State told the jury, "And that's important to
that mitigation question, because that mitigation question asks you to consider all the
evidence and it also asks you to consider the circumstances of the offense and the
character of the Defendant."

 Defense counsel came close to explaining how the jury should consider the
evidence, but in light of the trial court's instructions and the State's argument, this is not
sufficient to correct the problem.

 But we also suggest to you, respectfully, that there are mitigating
circumstances in this case that reduce his moral blameworthiness. His
mental deficiencies, call it whatever you want, mental retardation,
borderline, everyone agrees, even the State's witnesses, this is a very slow
man. His brain simply does not work the way yours and mine do.

The parties' arguments did not explicitly inform the jury that it should reconsider the
appellant's mental impairment when considering the fourth special issue if it concluded
that the appellant was not mentally retarded.

 Because there is a reasonable likelihood that the jury believed that it could not give
effect to mental impairment, outside of tending to show that the appellant is mentally
retarded, the trial court erred in instructing the jury to "consider whether any other
mitigating circumstance or circumstances exist as defined herein."

 We appreciate that the trial court had once again found itself in a difficult position. 
During this trial, the Supreme Court handed down its opinion in Atkins v. Virginia, (18)
holding that executing people who are mentally retarded violates the Eighth Amendment
to the United States Constitution. The legislature has not modified the statutory special
issues within Articles 37.071 and 37.0711 to include a special issue on mental retardation. 
The trial court might have believed that it was not permitted to submit a separate special
issue solely on mental retardation. (19)
 

 Although we may have sympathy for the trial court's position, we conclude that
there is a reasonable likelihood that the jury believed that it was not permitted to consider
mental impairment outside of determining whether the appellant is mentally retarded. As
a result, the instructions in this case fell short of the constitutional requirement that the
jury be provided a vehicle to give effect to its reasoned moral response to the appellant's
mitigating circumstances. 

V. Harm Analysis


 Under Code of Criminal Procedure Article 36.19, we will not reverse a conviction
or sentence on the basis of jury charge error "unless the error appearing from the record
was calculated to injure the rights of the defendant, or unless it appears that the defendant
has not had a fair and impartial trial." (20) In Almanza v. State, we have concluded that this
language created two separate harm-analysis standards: the first to be used when a timely
objection is made to the charge; the second to be used when no such objection appears in
the record. (21)

 The first standard dictates that reversal should occur if the defendant made a
timely objection and if the error is "calculated to injure the rights of the defendant." We
have interpreted this to mean that there must be some harm to the defendant from the
error. (22) Properly preserved jury-charge error requires reversal unless it is harmless. If the defendant has not made a timely objection, we apply the second standard,
and reversal is not required unless he has not had a fair trial. (23)

 The appellant in this case did make a timely objection to the charge, so we will
apply the first standard and reverse unless the error is harmless. Because we have already
concluded that there is a reasonable likelihood that the jury believed that it was not
permitted to consider evidence of mental impairment outside of determining whether the
appellant is mentally retarded, we cannot conclude that the error was harmless. As a
result, the error is reversible.

VI. Conclusion


 We conclude that the trial court erred in instructing the jury on the mitigation
special issue and that the error was not harmless. We reverse the appellant's sentence and
remand for a new punishment trial. (24)

Delivered: October 5, 2005.

Publish.

Appendix



 This is cause No. 10,222, the State of Texas versus Johnny Paul Penry. In the
District Court of Polk County Texas, 258th Judicial District. 

Charge of the Court.

 Members of the jury, the Defendant, Johnny Paul Penry, has previously been found
guilty of the offense of the capital murder of Pamela Carpenter, which was committed by
him on or about October 25, 1979, in Polk County, Texas. It is necessary now for you to
determine from all the evidence in the case the answers to certain questions called Special
Issues in this Charge. The Court instructs you further, however, as follows.

 Roman Numeral One, range of punishment. The mandatory punishment for capital
murder is death or confinement in the Institutional Division of the Texas Department of
Criminal Justice for life.

 Roman Numeral Two, consideration of evidence. In determining the answer to the
Special Issues you shall consider all of the evidence submitted to you in this trial. 
Further, you shall consider all evidence submitted to you during the trial as to the
character or background of the Defendant or the circumstances of the offense that
militates for or mitigates against the imposition of the death penalty.

 You are instructed that when you deliberate on the Special Issues, you are to
consider all relevant mitigating circumstances, if any, supported by the evidence
presented in the trial. A mitigating circumstance may include, but is not limited to, any
aspect of the Defendant's character, background, or circumstances of the crime which you
believe could make a death sentence inappropriate in this case, if any. If you find that
there are mitigating circumstances in this case, you must decide how much weight they
deserve, if any, and thereafter give effect to them in assessing the defendant's personal
culpability at the time you answer the Special Issues.

 Roman Numeral Three, Special Issues Number 1, 2 and 3. The Jury is instructed
to return a special verdict of "yes" or "no" to Special Issues No. 1, No. 2, and No. 3.

 The word "deliberately," as used in Special Issue No. 1, means a manner of doing
an act characterized by or resulting from careful consideration, a conscious decision
involving a thought process which embraces more than mere will to engage in the
conduct.

 The burden of proof as to Special Issue No. 1, No. 2 and No. 3, rests upon the
State and never shifts to the Defendant. The State must prove beyond a reasonable doubt
that the answers to each of these Special Issues should be "yes." However, it is not
required that the State prove an affirmative answer to these issues beyond all doubt. It is
required that the State's proof excludes all reasonable doubt concerning an affirmative
answer to each of these three issues. In the event you have a reasonable doubt as to an
affirmative answer to one or more of these after considering all of the evidence before
you and these instructions, you will answer the issue or issues "no."

 You are therefore instructed that you may not answer Special Issue No. 1, No. 2 or
No. 3 "yes" unless all jurors unanimously agree beyond a reasonable doubt. Further, you
may not answer any of these three special issues "no" unless ten or more jurors agree.

 Roman Numeral Four, Special Issue No. 4. You are further instructed that if the
jury answers Special Issue No. 1, No. 2, and No. 3 "yes" then, and only then, the jury
shall answer Special Issue No. 4. The jury will answer Special Issue No. 4 either "yes" or
"no." There is no burden of proof upon the State or the Defendant regarding Special
Issue No. 4. The jury shall consider mitigating evidence, if any, that a juror might regard
as reducing the Defendant's moral blameworthiness.

 You are instructed that mental retardation is a mitigating factor as a matter of law. 
Mental retardation is defined as, (A), significantly subaverage intellectual functioning, an
IQ of approximately 70 or below on an individually administered IQ test; (B), concurrent
deficits or impairments in present adaptive functioning, i.e., the person's effectiveness in
meeting the standards expected for his or her age by his or her cultural group in at least
two of the following areas: Communication, self-care, home living, social/interpersonal
skills, use of community resources, self-direction, functional academic skills, work,
leisure, health, and safety; and (C), the onset is before 18 years.

 Therefore, you are instructed that if you believe from all the evidence that the
Defendant is a person with mental retardation, then you are instructed to answer Special
Issue No. 4 "yes." However, if you do not believe from all the evidence that the person is
- that the Defendant is a person with mental retardation, then you shall follow the Court's
instructions previously given herein concerning the appropriate answer to Special Issue
No. 4 and consider whether any other mitigating circumstance or circumstances exist as
defined herein.

 The jury may not answer Special Issue No. 4 "no" unless all jurors agree
unanimously. The jury may not answer "yes" to this issue unless ten or more jurors
agree.

 Roman Numeral Five, effect of answers to Special Issues. You are instructed that
if you answer Special Issues No. 1, No. 2, and No. 3 "yes," and you answer Special issue
No. 4 "no," then the Court shall sentence the Defendant to death.

 You are further instructed that if you answer Special Issues No. 1, No. 2, No. 3 and
No. 4 "yes," then the Court shall sentence the defendant to confinement in the
Institutional Division of the Texas Department of Criminal Justice for life.

 Furthermore, you are instructed that if you answer Special Issues No.1, No. 2, No.
3 in the negative, that is, an answer of "no" to one or more of these issues, then the Court
shall sentence the defendant to confinement in the Institutional Division fo the Texas
Department of Criminal Justice for life.

 Roman Numeral Six, special instructions. During your deliberations you are not to
consider nor discuss any possible action of the Board of Pardons and Paroles division of
the Texas Department of Criminal Justice or the Governor or how long a Defendant will
be required to serve to satisfy a sentence of life imprisonment.

 You are further instructed that you are not to be swayed by mere sentiment,
conjecture, sympathy, passion, prejudice, public opinion or public feeling.

 You are instructed that a Defendant may testify in his own behalf if he chooses to
do so. This, however, is a privilege accorded to the Defendant, and in the event he elects
not to do so, that fact will not be taken by you as a circumstance against him nor prejudice
him in any way. In this case the Defendant has elected not to testify and you are
instructed that you cannot and must not refer to or allude to that fact throughout your
deliberations nor take it into consideration for any purpose whatsoever as a circumstance
against the Defendant.

 Your are further instructed that if there is any evidence before you in this case
regarding the Defendant having committed an offense or offenses, if any, other than the
offense for which he has been convicted, to-wit, the capital murder of Pamela Carpenter,
you cannot consider this evidence for any purpose unless you find and believe there is
clear proof that the Defendant committed such other offense or offenses, if any were
committed, and even then you may only consider the same in determining the answers to
the Special Issues.

 Your are instructed that if you heard testimony from expert witnesses that was not
supported by the evidence admitted before you during the course of this trial, those facts
shall only be considered for the purpose of explanation or support for any such expert's
opinions or conclusions and they shall not be considered for the truth of the matter
asserted.

 You are the exclusive judges of the facts proved, of the credibility of the witnesses
and the weight to be given their testimony. But it is the law you shall receive in these
written instructions and you will be governed thereby.

 Occasionally during jury deliberations a dispute arises as to the testimony
presented. If this should occur in this case, you shall inform the Court and request that
the Court read the portion of the disputed testimony to you from the official transcript.

 Roman Numeral Seven. After you retire to the jury room, you shall select one of
your members as your foreperson. It is his or her duty to deliberate - to preside at your
deliberations, vote with you, and to certify to your verdict by using the appropriate forms
included herein, and signing the same as foreperson. 

 No one has any authority to communicate with you except the officer who has you
in charge. During your deliberations in this case, you must not consider, discuss, nor
relate any matters not in evidence before you. You should not consider nor mention any
personal knowledge or information that you may have about any person or fact connected
with this case which is not shown by the evidence before you.

 It is your duty as jurors to consult with one another and to deliberate with a view to
reaching an agreement, if you can so without violence to individual judgment. Each of
you must decide the case for yourself, but do so only after an impartial consideration of
the evidence with your fellow jurors. In the course of your deliberations, do not hesitate
to re-examine your views and change your opinion if convinced it is erroneous, but do not
surrender your honest conviction as to the weight or effect of evidence solely because of
the opinion of your fellow jurors or for the mere purpose of returning a verdict.

 After you have retired, you may communicate with this Court in writing through
the officer who has you in charge. Do not attempt to talk to the officer who has you in
charge, or the attorneys or the Court, or anyone else concerning any questions you may
have. Following the arguments of the counsel, you will retire to consider your verdict.

 Verdict form, Special Issues. Special Issue verdict forms. The Special Issues,
with forms for your answers are as follows: Special Issue No. 1: Was the conduct of the
Defendant, Johnny Paul Penry, that caused the death of Pamela Carpenter, the deceased,
committed deliberately and with the reasonable expectation that the death of the deceased
would result? Answer: We, the jury, unanimously find and determine beyond a
reasonable doubt that the answer to this Special Issue is "yes." An a line provided for the
foreperson to sign. Or, we, the jury, because at least ten jurors have a reasonable doubt as
to the matters inquired about in this Special Issue, find and determine that the answer to
this Special Issue is "no." And a line provided for the foreperson to sign.

 Special Issue No. 2: Is there a probability that the Defendant, Johnny Paul Penry,
would commit criminal acts of violence that would constitute a continuing threat to
society? Answer: We, the jury, unanimously find and determine beyond a reasonable
doubt that the answer to this Special Issue is "yes." And a line provided for the
foreperson to sign. Or, we, the jury, because at least ten jurors have a reasonable doubt as
to the matter inquired by in this Special Issue, find and determine that the answer to this
Special Issue is "no." And a line provided for the presiding juror to sign.

 Special Issue No. 3: Was the conduct of the Defendant, Johnny Paul Penry, in
killing Pamela Carpenter, the deceased, unreasonable in response to provocation, if any,
by the deceased? Answer: We, the jury, unanimously find and determine beyond a
reasonable doubt that the answer to this Special Issue is "yes." And a line provided for
the foreperson to sign. Or, we, the jury, because at least ten jurors have a reasonable
doubt as to the matters inquired about in this Special Issue, find and determine that the
answer to this Special Issue is "no." And a line provided for the foreperson to sign.

 In the event that the jury has answered Special Issue No. 1, Special Issue No. 2 and
Special Issue No. 3 in the affirmative, then, and only then, does the jury answer Special
Issue No. 3 that follows. Special Issue No. 4: Do you find from the evidence, taking into
consideration all of the evidence, including the circumstances of the offense the
Defendant's character and background, and the personal moral culpability of the
Defendant, Johnny Paul Penry, that these is a sufficient mitigating circumstance or
circumstances to warrant that a life - that a sentence of life imprisonment rather than a
death sentence be imposed. Answer: We, the jury, unanimously find that the answer to
this Special Issue is "no." And a line provided for the foreperson to sign. Or, we, the
jury, find because at least ten jurors find that there is sufficient mitigating circumstance or
circumstances to warrant that a sentence of life imprisonment rather than a death sentence
be imposed, find that the answer to this Special Issue is "yes." And a line provided for
the foreperson to sign.

 After this jury has answered each of the Special Issues under the conditions and
instructions outlined above, the foreperson shall sign the verdict for below.

 Verdict: We, the jury, return in open Court the above answers to the Special Issues
submitted to us, and the same is our verdict in this case. And a line provided for the
foreperson to sign.


 

 
1. Penry v. State, 691 S.W.2d 636 (1985).
2. Penry v. Lynaugh, 492 U.S. 302, 328 (1989) (Penry I).
3. Before September 1, 1991, in capital murder cases that were reversed on the basis of
error during punishment only, the cases were remanded for a new trial on guilt and punishment. 
The legislature amended Code of Criminal Procedure Article 44.29 in 1991 to provide for a
remand on punishment only when reversible error occurred during punishment. Act of May 17,
1991, 72d Leg., R.S., ch. 838, §2, 1991 Tex. Gen. Laws 2898, 2900.
4. Penry v. State, 903 S.W.2d 715 (1995).
5. Penry v. Johnson, 532 U.S. 782, 804 (2001) (Penry II).
6. A copy of the instructions and special issues that were read to the jury is attached as an
appendix.
7. See Tex. Code Crim. Proc. Art. 37.0711, § 3(b).
8. See Tex. Code Crim. Proc. Art. 37.0711, § 3(e).
9. Emphasis added. 
10. 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).
11. Penry I, 492 U.S. at 328.
12. Johnson v. Texas, 509 U.S. 350, 362 (1993) (quoting McKoy v. North Carolina, 494
U.S. 433, 456 (1990) (Kennedy, J., concurring)).
13. Boyde v. California, 494 U.S. 370, 380-81 (1990).
14. The trial court in Boyde submitted the following instruction to the jury:


 In determining which penalty is to be imposed on [each] defendant, you shall
consider all of the evidence which has been received during any part of the trial of
this case, [except as you may be hereafter instructed]. You shall consider, take
into account and be guided by the following factors, if applicable:


 (a) The circumstances of the crime of which the defendant was convicted in the
present proceeding and the existence of any special circumstance[s] found to be
true.


 (b) The presence or absence of criminal activity by the defendant which involved
the use or attempted use of force or violence or the expressed or implied threat to
use force or violence.


 (c) The presence or absence of any prior felony conviction.


 (d) Whether or not the offense was committed while the defendant was under the
influence of extreme mental or emotional disturbance.


 (e) Whether or not the victim was a participant in the defendant's homicidal
conduct or consented to the homicidal act.


 (f) Whether or not the offense was committed under circumstances which the
defendant reasonably believed to be a moral justification or extenuation for his
conduct.


 (g) Whether or not the defendant acted under extreme duress or under the
substantial domination of another person.


 (h) Whether or not at the time of the offense the capacity of the defendant to
appreciate the criminality of his conduct or to conform his conduct to the
requirements of law was impaired as a result of mental disease or defect or the
affects of intoxication.


 (i) The age of the defendant at the time of the crime.


 (j) Whether or not the defendant was an accomplice to the offense and his
participation in the commission of the offense was relatively minor.


 (k) Any other circumstance which extenuates the gravity of the crime even though
it is not a legal excuse for the crime.


Id. at 373 n.1.
15. Id. at 375.
16. Id. at 382.
17. See Penry I, 492 U.S. at 328.
18. 536 U.S. 304, 321 (2002).
19. But see State v. McPherson, 851 S.W.2d 846, 849-50 (Tex. Crim. App. 1992) (noting
that this Court had "grappled with the application of Penry" for some time; upholding the
submission of an extra-statutory special mitigation issue).

20. Tex. Code Crim. Proc. Art. 36.19.
21. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).
22. Ibid.
23. Ibid.
24. Because we have reversed the appellant's sentence on the basis of his fifteenth point of
error, we need not address the appellant's other nineteen points of error.