Opinion filed January 18, 2013



In The

# Eleventh Court of Appeals

No. 11-11-00010-CR

JOHN WILLIAM SPURLOCK, Appellant

V.

STATE OF TEXAS, Appellee

On Appeal from the 278th District Court

Leon County, Texas

Trial Court Cause No. CM-10-241

## MEMORANDUM OPINION

A jury convicted John William Spurlock of felony driving while intoxicated. TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West Supp. 2012). The trial court sentenced appellant as a habitual offender to confinement for life. *Id.* § 12.42(d). We modify and affirm.

*Issues on Appeal*

Appellant presents four issues for review. In his first issue, appellant contends that the trial court erred by ordering him to pay attorney's fees because there was no evidence of his

ability to pay those fees. In his second issue, appellant contends that the trial court erred by sentencing him as a habitual offender because the State failed to prove that an earlier felony conviction was final. In his third issue, appellant challenges the sufficiency of the evidence to support his conviction for the charged offense. In his fourth issue, appellant contends that the trial court erred by overruling his objection to the prosecutor's jury argument during the guilt/innocence phase.

*Sufficiency of the Evidence to Support Conviction*

A person is guilty of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." *Id.* § 49.04(a). "Intoxicated" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" or "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2)(A), (B) (West 2011). Driving while intoxicated is a third-degree felony if it is shown at trial that the defendant has previously been convicted "two times of any other offense relating to the operating of a motor vehicle while intoxicated." *Id.* § 49.09(b)(2) (West Supp. 2012).

In this case, appellant was charged with a third-degree felony offense under Section 49.09(b)(2). The indictment alleged that, on or about May 6, 2010, appellant operated a motor vehicle in a public place while he was intoxicated. The indictment also alleged that appellant had previously been convicted twice of offenses relating to operating a motor vehicle while intoxicated, with the first conviction occurring on February 4, 1983, and the second conviction occurring on January 14, 1991.

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under this standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to

be given their testimony. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

Katherine Wagley testified that she lived in a house at 3914 Highway 7 East in Centerville, Texas. Appellant and Wagley's daughter were acquaintances. Appellant was at Wagley's house on May 6, 2010. Wagley testified that, on that occasion, appellant was "very drunk." She said that appellant could not walk straight, talk, or respond. Wagley also said that appellant ran into a tree that was in her yard with his blue pickup. Wagley testified that she called 9-1-1 because appellant insisted on leaving her house in his pickup. Wagley was afraid that "he was going to either kill himself or kill someone else." When appellant left Wagley's house, he turned right onto Highway 7, which was a two-lane highway.

Wagley said that she had seen appellant at her house on prior occasions when she did not believe he was drunk. She said that, on those occasions, appellant had been able to respond to questions and converse with her.

Leon County Deputy Sheriff Robert Allen Kelley testified that, on May 6, 2010, he received a dispatch about a possible intoxicated driver in a blue pickup. Deputy Kelley responded to the dispatch by driving his patrol car in an easterly direction on Highway 7. His patrol car was not equipped with video recording equipment. He located the blue pickup about ten miles east of Centerville. The record shows that appellant was driving the pickup. When Deputy Kelley arrived at the scene, Leon County Sheriff Jerry Wakefield was following appellant. Deputy Kelley activated his lights and followed appellant and Sherriff Wakefield. Deputy Kelley testified that appellant was driving twenty to twenty-five miles per hour. Deputy Kelley said that appellant continued to veer his pickup from right to left. According to Deputy Kelley, appellant "drove off of the roadway on more than one occasion" and "crossed the centerline on more than one occasion."

Appellant turned his pickup onto FM 1511. At that time, Deputy Kelley pulled his patrol car alongside appellant's pickup, and then appellant pulled his pickup over to the shoulder of the road and stopped. Deputy Kelley testified that he followed appellant for two or three miles before appellant stopped his pickup. Deputy Kelley stopped his patrol car, exited the car, and then approached appellant. Appellant got out of his pickup at Deputy Kelley's request. Deputy Kelley said that appellant was "unstable on his feet," that appellant had bloodshot eyes,

3

and that appellant's speech was "a little slurred and a little slow." Deputy Kelley noticed "a faint odor of alcohol about appellant."

Appellant gave Deputy Kelley consent to search his pickup. Deputy Kelley testified that he found a "thirty-two" pack of beer behind the driver's seat of the pickup and that at least three cans of beer were missing from the pack. He also found an unopened can of beer under the driver's seat. Deputy Kelley also found a black shaving kit on the floorboard that contained prescription medications belonging to appellant. Deputy Kelley requested the Department of Public Safety to dispatch a trooper to assist him in his investigation.

DPS Trooper Derek Seymore arrived at the scene at about 11:45 a.m. Trooper Seymore activated the video recording equipment in his patrol car. The State introduced a copy of the recording of the stop into evidence. The recording contained video and audio. Trooper Seymore got out of his patrol car and approached appellant. At that time, appellant was standing near the back of his pickup. Trooper Seymore testified that appellant was "swaying" on his feet. In response to questioning by Trooper Seymore, appellant said that he had been to the doctor's office, that he had stopped at an individual's house, and that he was on his way home. Trooper Seymore said that appellant's eyes were "heavy" and that his speech was "very thick." Trooper Seymore smelled "a slight odor of an alcoholic beverage" on appellant.

Trooper Seymore asked appellant whether he had any medical conditions and whether he took any medications. Appellant told Trooper Seymore that he had high blood pressure and that he was a diabetic. Because appellant said that he was a diabetic, Trooper Seymore asked appellant about his sugar level. Appellant informed Trooper Seymore that he did not believe his sugar level was elevated or low at that time. Appellant also told Trooper Seymore that he had a mental disorder. Appellant said that he took glyburide for his diabetes; clonidine for his blood pressure; diazepam, Valium, and Pristiq for his mental disorder; and Darvon for his pain. In response to further questioning, appellant told Trooper Seymore that he had taken his medications but that he had not consumed any alcoholic beverages.

Trooper Seymore administered standard field sobriety tests to appellant. Trooper Seymore testified in detail about the tests. He said that appellant exhibited all six clues of intoxication on the horizontal gaze nystagmus (HGN) test. Appellant exhibited five of eight clues of intoxication on the walk-and-turn test and two of four clues of intoxication on the one-leg stand test. Trooper Seymore testified that appellant performed "poorly" on the field sobriety

4

tests and that the results of the tests were "positive," which meant that appellant failed them. Appellant also performed a preliminary breath test, and the test indicated the presence of alcohol on his breath.

Trooper Seymore believed that appellant was intoxicated and, therefore, placed him under arrest. Appellant agreed to provide a blood specimen for analysis. Trooper Seymore transported appellant to the hospital, where a phlebotomist obtained a blood specimen from appellant at about 1:30 p.m. After giving blood, appellant believed that his blood pressure was elevated and that his blood sugar level was elevated. Trooper Seymore took appellant to the hospital's emergency room for evaluation. Appellant's blood sugar level and blood pressure were both within normal ranges.

Trooper Seymore testified that, during an inventory of appellant's pickup, officers found eighteen Bud Light beers that remained in what had been a "thirty-pack" of beer. Officers also found a can of beer under the driver's seat. Trooper Seymore said that the officers also found the black bag that contained appellant's prescription medications.

Trooper Seymore transported appellant to the county jail. Trooper Seymore took appellant's medications to the jail so that they could be administered to appellant there.

We have reviewed the video footage of the stop that was recorded by the equipment in Trooper Seymore's patrol car. The audio and video portions of the footage support Trooper Seymore's testimony.

Lindsay Hatfield, a DPS forensic scientist, analyzed appellant's blood specimen for the presence of alcohol. Hatfield testified that testing of appellant's blood showed that it contained 0.08 grams of alcohol per one hundred milliliters of blood. Hatfield explained that she had four separate test results for appellant's blood. Those results showed blood alcohol levels of 0.0863, 0.0853, 0.0874, and 0.0865. According to DPS protocol, Hatfield dropped off the last two decimal places from the results to arrive at the alcohol level of 0.08.

Dana Paris, a DPS forensic scientist, analyzed appellant's blood for the presence of drugs. Testing of appellant's blood showed that it contained diazepam, nordiazepam, and temazepam. Paris said that diazepam was an antianxiety drug and that Valium was a brand name for diazepam. Paris testified that the side effects of diazepam included drowsiness, dizziness, lack of coordination, and decreased divided attention. Paris explained that nordiazepam and temazepam were metabolites of diazepam. Additional testing showed that appellant's blood also

5

contained O-desmethylvenlafaxine, a metabolite of an antidepressant drug with the brand name Pristiq. Appellant's blood also contained norpropoxyphene, which was a metabolite of the drug propoxyphene. Paris explained that propoxyphene was a pain killer with the brand name of Darvocet or Darvon.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to establish that appellant operated his pickup in a public place while "not having the normal use of [his] mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into [his] body." *See* Section 49.01(2)(A). Our conclusion is supported by ample evidence. Wagley testified that appellant was very drunk, could not walk straight, and could not carry on a conversation. Deputy Kelley saw appellant drive his pickup off the road more than once and across the centerline more than once. Deputy Kelley and Trooper Seymore both observed appellant's personal behavior and smelled the odor of alcohol on appellant. Trooper Seymore administered the field sobriety tests. Appellant performed poorly on the tests and exhibited multiple clues of intoxication on all the tests. The preliminary breath test indicated the presence of alcohol. The video of the stop supported Trooper Seymore's testimony. Testing of appellant's blood showed that it contained alcohol and drugs. The evidence was sufficient to establish that appellant was intoxicated while operating his pickup.

Appellant contends that the video that was recorded by the equipment in Trooper Seymore's patrol car "does not substantiate much of the trooper's description of appellant's condition." As the trier of fact, the jury had the responsibility to resolve any conflicts in the evidence. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). An appellate court may not reevaluate the weight and credibility of the record evidence and thereby substitute its judgment for that of the jury. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The State presented evidence that established, as alleged in the indictment, that appellant had previously been convicted of two offenses relating to operating a motor vehicle while intoxicated. Appellant does not challenge the sufficiency of the evidence to establish the prior convictions. Based on the evidence, a rational juror could have found the essential elements of the charged offense beyond a reasonable doubt. Appellant's third issue is overruled.

*Jury Argument*

Appellant argues in his fourth issue that the trial court erred by overruling his objection to the prosecutor's jury argument. Proper jury argument generally falls within four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Esquivel v. State*, 180 S.W.3d 689, 692 (Tex. App.—Eastland 2005, no pet.). Counsel is allowed wide latitude in drawing inferences from the record that are reasonable, fair, legitimate, and offered in good faith. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).

Appellant complains that the prosecutor engaged in improper jury argument by asking the jurors to place themselves in the shoes of the victim. The following exchange took place during the prosecutor's argument:

> [PROSECUTOR]: And then he was driving. You heard the evidence. The officer was behind him. You heard Robert Kelley say that. But Ms. Wagley, she knew the defendant. He was friends with her daughter, been to her house several times. She had seen him before. But she was so concerned for you, all of you on the highway, that day --
>
> [DEFENSE COUNSEL]: Your Honor, I object. That is an improper line of argument right there. She is personalizing the argument to the jury.
>
> [THE COURT]: Overruled.
>
> [PROSECUTOR]: She was concerned -- she was even concerned about the defendant. She called the Sheriff's Office.

In *Torres v. State*, 92 S.W.3d 911, 919–23 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd), the court provided a thorough analysis of cases involving jury arguments in which prosecutors asked the jurors to place themselves in the shoes of the victim. As explained in *Torres*, a prosecutor engages in improper argument in the punishment phase when the prosecutor "[asks] the [jurors] to place themselves in the shoes of the victim to consider what punishment the victim would want to impose upon the defendant." *Id.* at 922–23. Such arguments are improper because they request the jury "to assess punishment not on impartial objective notions of justice, but upon personal passion accelerated by the outrage every human being naturally feels toward one who has wrongfully caused him pain, embarrassment, grief, or loss." *Id.* at 922.

These improper arguments amount to requests of the jurors to abandon their objectivity in assessing punishment. *Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985).

In this case, the prosecutor made the complained-of statement in the guilt/innocence phase. Wagley testified that she called 9-1-1 because she was afraid that appellant would kill himself or someone else on the road if he drove his pickup. She said that she was concerned for appellant and others. The prosecutor's statement that Wagley "was so concerned for you, all of you on the highway, that day" was a proper summation of Wagley's testimony or, alternatively, a reasonable deduction from that testimony. The prosecutor's statement did not amount to a request of the jurors to abandon their objectivity in reaching a verdict. Therefore, the trial court did not err by overruling appellant's objection to the statement. Appellant's fourth issue is overruled.

*Findings on Habitual-Offender Allegations*

The State sought to have appellant sentenced as a habitual offender under Section 12.42(d) of the Penal Code. Section 12.42(d) provides in relevant part as follows:

> [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction [he] shall be punished by imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years.

In this case, the indictment alleged that, on April 29, 1993, appellant was convicted of the felony offense of burglary of a building in cause number 663100 in the 337th District Court of Harris County, Texas, and that, on January 24, 2006, after the conviction in cause number 663100 became final, appellant was convicted of the felony offense of driving while intoxicated third or more in cause number 1049661 in the 248th District Court of Harris County.

Appellant pleaded "not true" to the enhancement allegations. At the punishment hearing, the State introduced certified copies of two penitentiary packets from the Texas Department of Criminal Justice – Correctional Institutions Division. The pen packets related to the cause numbers described in the enhancement allegations in the indictment. They contained numerous records, including judgments of conviction in the cause numbers described in the enhancement allegations in the indictment. The State presented expert testimony that the right thumb print contained in one of the pen packets matched appellant's right thumb print and that the

8

fingerprints contained in the other pen packet matched appellant's fingerprints. The pen packets in combination with the expert testimony showed that, as alleged in the indictment, appellant was convicted of the felony offense of burglary of a building in cause number 663100 on April 29, 1993, and that he was convicted of the felony offense of driving while intoxicated third or more in cause number 1049661 on January 24, 2006. After the punishment evidence was concluded, the trial court found that the enhancement allegations were "true." The trial court sentenced appellant as a habitual offender to confinement for life.

Appellant contends in his second issue that the evidence was legally insufficient to establish that his conviction in cause number 1049661 for driving while intoxicated was a final conviction for enhancement purposes under Section 12.42(d). In reviewing the sufficiency of the evidence, we determine whether a rational trier of fact could have found that the enhancement allegations were true beyond a reasonable doubt. *Flowers v. State*, 220 S.W.3d 919, 923, 925 (Tex. Crim. App. 2007). We review the evidence in the light most favorable to the trial court's finding. *Littles v. State*, 726 S.W.2d 26, 30 (Tex. Crim. App. 1987).

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt (1) that a prior final conviction exists and (2) that the defendant is linked to that conviction. *Flowers*, 220 S.W.3d at 921; *Henry v. State*, 331 S.W.3d 552, 555 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A conviction from which an appeal has been taken is not considered a final conviction until it is affirmed by the appellate court and mandate has issued. *Henry*, 331 S.W.3d at 556. Once the State provides prima facie evidence of an enhancement conviction, we presume that the conviction is final when faced with a silent record regarding finality. *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App. 2007); *Henry*, 331 S.W.3d at 555. However, if the State's proof of the prior conviction shows on its face that the defendant appealed the conviction, the presumption of finality has been rebutted, and the State must prove that the mandate issued. *Johnson v. State*, 784 S.W.2d 413, 414 (Tex. Crim. App. 1990); *Jones v. State*, 711 S.W.2d 634, 635–36 (Tex. Crim. App. 1986); *Henry*, 331 S.W.3d at 555.

By introducing the pen packet relating to cause number 1049661 and the expert fingerprint testimony, the State presented prima facie evidence of appellant's conviction in that cause number. *See Varnes v. State*, 63 S.W.3d 824, 834 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("It is well settled that a pen packet combined with fingerprint analysis linking the

packet to the defendant is sufficient proof of prior convictions."). The pen packet that relates to cause number 1049661 does not reflect that appellant appealed the conviction. The trial court included the following "Special Instructions" on page 2 of the judgment in cause number 1049661: "Appeal Waived. No permission to appeal granted." No evidence was presented at the punishment hearing that appellant appealed the conviction. The record is silent as to whether appellant appealed. Because there was no evidence that appellant appealed the conviction, the presumption of finality was not rebutted, and the State had no burden to prove that a mandate had issued. *Johnson*, 784 S.W.2d at 414; *Figueroa v. State*, 250 S.W.3d 490, 504 (Tex. App.— Austin 2008, pet. ref'd).

The evidence was legally sufficient to establish that appellant's conviction in cause number 1049661 was a final conviction. Therefore, the trial court did not err by sentencing appellant as a habitual offender. Appellant's second issue is overruled.

*Attorney's Fees*

The trial court ordered appellant to pay $4,770 for court-appointed attorney's fees. In his first issue, appellant challenges the sufficiency of the evidence to support the trial court's order that he pay the attorney's fees. A trial court has authority to order a defendant to pay the attorney's fees of appointed counsel if the court determines that "[the] defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided." TEX. CODE CRIM. PROC. ANN. art 26.05(g) (West Supp. 2012). If the trial court makes this determination, it shall order the defendant to pay the amount of attorney's fees that it finds the defendant is able to pay. *Id.* "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). For the purpose of assessing attorney's fees, once a defendant is determined to be indigent, he is presumed to remain so for the remainder of the proceedings absent proof of a material change in his financial circumstances. TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2012); *Mayer*, 309 S.W.3d at 557. Accordingly, when a trial court determines that the defendant is indigent at the outset of trial, there must be some evidence presented to the trial court of a change in the defendant's ability to pay attorney's fees before the fees can be assessed against the defendant. *Mayer*, 309 S.W.3d at 557; *Watkins v. State*, 333 S.W.3d 771, 781–82 (Tex. App.—

10

Waco 2010, pet. ref'd); *Roberts v. State*, 327 S.W.3d 880, 884 (Tex. App.—Beaumont 2010, no pet.).

In this case, appellant requested court-appointed counsel before trial. Appellant submitted an indigence form in support of his request. In the form, appellant stated that he had monthly income of $653 in social security disability benefits. Appellant listed rent of $450 as his sole monthly expense. Therefore, appellant listed his monthly net income as $203. The trial court determined that appellant was indigent and appointed him counsel.

At the punishment hearing, the State introduced a presentence investigation report into evidence. The report indicated that appellant received $652 in monthly social security disability benefits. The State asserts in its brief that, because the trial court sentenced appellant to a life sentence, "appellant would obviously no longer have the $450 monthly rent obligation and would consequently have $450 more in available income, which would constitute a material change in his finances and enable him to pay the attorney's fees assessed."

However, after the trial court announced the life sentence at the punishment hearing, appellant's counsel immediately requested the trial court to find that appellant continued to be indigent and to order the county to pay for the reporter's record. In response, the trial court stated, "That will be granted." Appellant's counsel also requested the trial court to appoint appellate counsel to appellant. The trial court entered an order in which it again determined that appellant was indigent and appointed counsel to represent appellant on appeal. Thus, the record does not show that the trial court determined that there had been a material change in appellant's financial circumstances or that appellant had the ability to pay attorney's fees. Nor does the record contain any evidence that appellant's financial circumstances had materially changed or that appellant had the ability to pay attorney's fees. The State did not present evidence that appellant would continue to receive social security disability payments while serving his life sentence. We conclude that the evidence is insufficient to support the trial court's imposition of attorney's fees against appellant, and we modify the judgment to delete the part of it in which the trial court ordered appellant to pay attorney's fees. Appellant's first issue is sustained.

*This Court's Ruling*

The judgment of the trial court is modified to delete "Attorney Fees: $4,770.00." As modified, the judgment of the trial court is affirmed.

**ORIGINAL OPINION SIGNED BY**
**JUSTICE TERRY McCALL**

TERRY McCALL

JUSTICE

January 18, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

12

## 11TH COURT OF APPEALS

## EASTLAND, TEXAS

## JUDGMENT

John William Spurlock,

\* From the 278th District
Court of Leon County,
Trial Court No. CM-10-241.

Vs. No. 11-11-00010-CR

\* January 18, 2013

State of Texas,

\* Memorandum Opinion by McCall, J.
(Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.)

This court has inspected the record in this cause and concludes that there is error in the judgment below. Therefore, in accordance with this court's opinion, the judgment of the trial court is modified to delete "Attorney Fees: $4,770.00." As modified, the judgment of the trial court is affirmed.