**Willie Marcel SHANNON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71805.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 11, 1996.

Rehearing Denied Jan. 29, 1997.

---

Allen C. Isbell, Houston, for appellant.

Carol M. Cameron, Asst. Dist. Atty., Houston, Matthew Paul, States Atty., Austin, for State.

## OPINION

MEYERS, Justice.

Appellant, Willie Marcel Shannon, was convicted of capital murder in November, 1993.[1] TEX. PENAL CODE ANN. § 19.03(a)(2). During the punishment phase, the jury affirmatively answered the special issue set forth in Texas Code of Criminal Procedure art. 37.071 § 2(b) and negatively answered the special issue set forth in Article 37.071 § 2(e). The trial judge sentenced appellant to death as required by Texas Code of Criminal Procedure art. 37.071 § 2(g). Direct appeal is automatic. TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(h). We will affirm.

Appellant raises sixteen points of error, but does not challenge the sufficiency of the evidence at either stage of trial. Therefore, we shall dispense with a recitation of the facts. We will address the points of error in the order they are presented.

 In points one through four, appellant complains that the trial court erred in refusing to instruct the jury that appellant would be "parole ineligible" until he had served thirty-five (35) calendar years in prison if sentenced to "life" imprisonment. He alleges that this was in violation of the due process clause of the Fourteenth Amendment; the Eighth Amendment; the due course of law provision under Article I, § 19 of the Texas Constitution; and Article I, § 13 of the Texas Constitution. Appellant relies primarily on *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), as his authority.

In *Smith v. State*, 898 S.W.2d 838 (Tex.Crim.App.1995)(plurality opinion), *cert. denied*, —— U.S. ——, 116 S.Ct. 131, 133

L.Ed.2d 80 (1995), the same issues were presented to this Court. Pursuant to the presentation of those issues, we engaged in a comprehensive discussion of *Simmons* as it relates to the law in Texas. We reiterated that parole is traditionally not a matter for jury consideration in a Texas capital murder trial. And, thus, it is not error for a trial court to refuse to admit testimony concerning parole. *Jones v. State*, 843 S.W.2d 487, 495 (Tex.Crim.App.1992), *cert. denied* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). Further, we "absolutely reject[ed]" the premise that *Simmons* has been extended to parole eligible defendants. *Smith*, 898 S.W.2d at 848. As such, we hold that the requested instruction which is the subject of these points was appropriately refused by the trial court. *Smith, supra*.

Appellant has given us no reason to revisit our analysis of *Smith*, nor has he shown us any distinguishing evidence in the record[2] or provided us with any other reason why *Smith* should not control in this case. *See Broxton v. State*, 909 S.W.2d 912(Tex.Crim.App.1995). Points of error one through four are overruled.

 In related points five and six, appellant advances that the trial court erred in refusing to instruct potential jurors on the length of appellant's "parole ineligibility," because "the prosecutor opened the door to that subject." In point seven, appellant maintains that this failure to instruct potential jurors on the length of appellant's "parole ineligibility" prevented him from asking relevant questions which violated his rights under Article I, § 10 of the Texas Constitution.

Appellant notes that, throughout voir dire, the prosecutor informed venirepersons that a "life" sentence does not mean "life without parole." However, his basic complaint seems to be that the judge should have elaborated on this. Specifically, in point of error five, appellant contends that the prosecutor

---

1. The crime was committed in July, 1992.

2. For example, appellant has pointed us to no place in the record where he presented evidence (or made an offer of proof if he were prevented

from presenting evidence) of appellant's ability to live peaceably in prison or expert testimony relating to a probable decline in appellant's propensity for violence.

"opened the door" to the subject of appellant's "parole ineligibility" when he said to venireperson A. Smith:

[THE STATE:] Why do you feel that the life imprisonment is more effective than the death penalty?

[VENIREPERSON:] Well, hopefully, with that there can be some rehabilitation.

[THE STATE:] What if there's not?

[VENIREPERSON:] What if there's not?

[THE STATE:] Yes.

[VENIREPERSON:] Who's to say? I mean, just have to go on good faith.

[THE STATE:] In the State of Texas we don't have life without parole.

[VENIREPERSON:] Okay.

[THE STATE:] So, the two punishments someone can give in capital murder is life or death. If the person gets life, if it's not life without parole, obviously, there's an opportunity potentially somewhere down the line that person might commit another crime. My question was why you think that life imprisonment is more effective than capital punishment.

This last statement then caused the venireperson to ask, "What is ... the law as far as when someone can be released?" Appellant asked that the venireperson be instructed as to the law in that area and the trial court denied the request.

In point six, appellant complains that the prosecutor again "opened the door" to the subject of appellant's "parole ineligibility" when questioning venireperson J. Ford.

[THE STATE:] So, before you get [to the punishment stage] you've had very horrible facts presented to you. You've made a decision someone intentionally killed someone with the specific intent to kill during the course of a robbery. Now you must determine the answer to those questions.

Some people say, I am so upset with violence and the prospect that people who get out on early release, and we just have a revolving door—I think one of the jurors before you said, in a situation where they go in, they get out, they go in, they get out, that if I find someone intentionally

killed someone with the specific intent to kill during the course of a robbery and I know if they get life imprisonment, there's a possibility that they may parole at some point in time, I don't have control over that, that I'm going to automatically give that person the death penalty or vote for the death penalty regardless of anything else. I've heard enough.

Sometime later when appellant was questioning the venireperson, the following occurred:

[APPELLANT:] Would it help you to know, if it existed, that there was minimum amount of time that someone would have to serve before they would even become eligible for parole?

[VENIREPERSON:] Yes.

[APPELLANT:] Obviously, if it was a lengthy period of time and they were there and availed themselves of whatever educational processes were available, that could be a factor in rehabilitation?

[VENIREPERSON:] Certainly it could be.

At this point, appellant requested that the judge give the venireperson an instruction concerning the minimum time a person would have to serve in prison, which request was denied. The juror was asked to step out into the hallway and appellant elaborated on his request, stating that:

Judge, at this time I am requesting that you give the juror an instruction that if a life sentence is returned in a capital murder such as this that the defendant would be required to serve 35 calendar years prior to becoming eligible, even becoming eligible, for consideration for parole. I'm asking that because in order to exercise an intelligent decision as to strike or accept this juror, I think it's imperative to know her feelings concerning that and whether or not it would affect her decision in assessing or answering these questions and in assessing either the death penalty or life in prison.

The trial court denied the request. For the reasons set out under points one through four, we hold that the trial judge did not abuse his discretion in failing to give the above requested instructions.[3] *Smith, supra*

3. We also note that, at least on these two occa- sions, appellant never objected to the prosecu-

and *Broxton, supra.* Furthermore, given that the subject of parole was frequently and freely alluded to by both parties throughout voir dire, we do not see that this "opens the door" to a discussion of the specifics of parole eligibility. *Smith, supra.* Points of error five and six are overruled.

■ Appellant's allegation in point seven is that he was prevented from asking relevant questions by the trial court's refusal to instruct veniremembers on appellant's "parole eligibility." This Court stated in *McCarter v. State,* 837 S.W.2d 117, 121–22 (Tex.Crim.App.1992), that the trial court must not restrict proper questions of venirepersons on voir dire. We held that a question is proper if its purpose is to discover a juror's views on an issue applicable to the case. Since parole is not a proper area of inquiry in Texas capital cases, we hold that the judge did not abuse his discretion in denying questions pertaining to this topic. *See Smith, supra.* Also, because appellant never set out a specific question he wanted to ask, we cannot determine whether that particular question would have been proper. *Caldwell v. State,* 818 S.W.2d 790, 794 (Tex. Crim.App.1991), *cert. denied,* 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). Point of error seven is overruled.

■ Appellant avers in point eight that the trial court erred in allowing jurors to take individual notes during trial. After the jury was sworn, but prior to trial, the judge gave the following admonition to the jurors:

> [T]his Court will allow you to take your personal notes regarding this matter, but follow these instructions: If you wish to take notes, and you're not obligated to, those are your notes. Those are for your personal use only and not to be shared with anyone else.
>
> At deliberations if you have a disagreement as to what may have actually been said by a witness, the official note keeper is the court reporter. What she takes

down are the official records of this court. And under some circumstances testimony of witnesses may be read back to jurors. But, understand, if there is a disagreement about any testimony, the official court reporter takes down the official records of this court. But if you want to take notes for your own use, that is agreeable with the Court.

The trial court then asked if each side was ready to proceed with trial. On affirmative answers from both sides, the court had the indictment read, and entered appellant's plea. After the completion of the guilt/innocence phase of trial, the jury commenced deliberations. Shortly thereafter, the jury sent out a note asking for "notes & pencils." Appellant alleges that the necessary implication of this request is that the jury's individual notes were utilized during deliberations. Appellant's point is without merit.

To begin, we hold that appellant did not make a *timely* objection at trial concerning the juror's note-taking. Thus, he has failed to preserve error on the point. Tex.R.App. Proc. 52(a). Further, even if the objection appellant made was timely, the record does not support appellant's contention. The record does not reveal whether any jurors took notes; whether they utilized those notes in their deliberations, if any were taken; what the jury meant by the phrase "notes & pencils" referred to in their note to the court; or how (or if) the court even ruled on this message. We refuse to speculate as to facts not included in the record and therefore hold that the judge did not abuse his discretion in allowing the jurors to take individual notes. *Hubbard v. State,* 892 S.W.2d 909, 910 (Tex. Crim.App.1995); *Price v. State,* 887 S.W.2d 949 (Tex.Crim.App.1994); *Johnson v. State,* 887 S.W.2d 957 (Tex.Crim.App.1994). Point of error eight is overruled.

■ Appellant challenges the constitutionality of Texas Code of Criminal Procedure

---

tor's correct statement of the law that no life without parole exists in Texas.

Furthermore, the jury was instructed in the charge that:

During your deliberations, you are not to consider or discuss any possible action of the Board of Pardons and Paroles Division of the

Texas Department of Criminal Justice or of the Governor, or how long the Defendant would be required to serve to satisfy a sentence of life imprisonment.

This is the same charge as was given in the *Smith* case.

Article 37.071 in point of error nine. Specifically, he contends that the "statutory definition of mitigating evidence" in Article 37.071 § 2(f)(4) "limits the jury's consideration to factors that render him less morally blameworthy and thereby narrows the jury's discretion in violation of the Eighth and Fourteenth Amendments to the United States Constitution."

▪ Article 37.071 § 2(f)(4) "defines" "mitigating evidence" to be "evidence that a juror *might* regard as reducing the defendant's moral blameworthiness." (Emphasis added.) There is no evidence that must be viewed by a juror as being *per se* mitigating. Instead, jurors must individually determine what evidence, if any, mitigates against the imposition of the death penalty and what weight, if any, to give that evidence in its consideration. Article 37.071 § 2(e) yields further support to this interpretation in that it requires the court to instruct the jury to take into consideration "*all* of the evidence, *including* the circumstances of the offense, the defendant's character and background, *and* the personal moral culpability of the defendant" (emphasis added) in determining whether sufficient mitigating circumstances exist to warrant a life sentence. Because the consideration and weighing of mitigating evidence is an open-ended, subjective determination engaged in by each individual juror, we conclude that Article 37.071 § 2(f)(4) does not unconstitutionally narrow the jury's discretion to factors concerning only moral blameworthiness as appellant alleges. *See Colella v. State,* 915 S.W.2d 834 (Tex.Crim. App.1995). Point of error nine is overruled.

▪ In his tenth point of error, appellant advances that the trial court improperly denied his motion for mistrial at punishment arguments when the prosecutor injected his opinion that appellant is a sociopath. Specifically, appellant complains of the following occurrence as the prosecutor made his closing statement:

You know, I had some things I planned on saying, but I don't know what else to say. I don't know how to respond to that argument that was made. That is a killer. That is a rapist. His past shows you he never expresses any remorse over what

he's done, and he doesn't want to change. That is a sociopath.

Appellant immediately objected that, "There was no evidence he was a sociopath from any witness." The court responded, "Disregard that. Stay in the record." Appellant then moved for a mistrial, which was denied.

▪ To constitute proper jury argument, the argument must encompass one of the following: 1) summation of the evidence presented at trial, 2) reasonable deduction(s) drawn from that evidence, 3) answer(s) to the opposing counsel's argument, or 4) a plea for law enforcement. *McFarland v. State,* 845 S.W.2d 824, 840 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988). This Court noted in *Gaddis* that counsel is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. Conversely, jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error. *Gaddis, supra.* Furthermore, in most cases, if error occurs, either a withdrawal of the question or an instruction to disregard will cure any error committed. *Wilson v. State,* 819 S.W.2d 662, 664 (Tex.App.—Corpus Christi 1991, *rev. ref'd* ).

Assuming that, in fact, there was no evidence in the record that appellant was a sociopath, then the prosecutor did inappropriately stray outside the record. However, we conclude from the context that the comment was not so egregious as to constitute reversible error. Appellant argues on appeal that whether or not someone is a sociopath and the behavior associated with that diagnosis is solely within the purview of an expert and "beyond the knowledge of the average layman." However, he also maintains that labeling someone a sociopath (apparently regardless of who applies the label—expert or layman) will necessarily influence a jury to find that the person so labeled is a future danger. Appellant substantiates this by string citing a number of cases where *expert* testimony has been presented injecting the term into evidence and where the jury has

found that the defendant would be a future danger. We are not persuaded by appellant's contradictory argument.

While we do agree that the comment in the instant case was improper, it was also isolated. We hold that the prompt instruction to disregard cured any error. *Norris v. State,* 902 S.W.2d 428, 443 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995). Point of error ten is overruled.

■ Appellant again challenges the constitutionality of Texas Code of Criminal Procedure Article 37.071 in points of error eleven through sixteen.[4] In points eleven, twelve, and thirteen, appellant alleges that Article 37.071 § 2(e) is unconstitutional under the Eighth and Fourteenth Amendments because it invites the open-ended discretion condemned by the United States Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)(point eleven); because meaningful appellate review of the jury's answer to that issue is impossible (point twelve); and because the statute does not assign a burden of proof, burden of persuasion, or standard of proof to this issue (point thirteen).

Article 37.071 § 2(e) states:

The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) of this article, it shall answer the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

The section is a statutory codification of the dictates handed down by the United States Supreme Court in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In *Penry,* the State argued that instructing the jury that it could render a discretionary grant of mercy based on miti-

gating evidence would be a return to the unbridled discretion that led to *Furman.* The Supreme Court responded to this with the following:

To be sure, *Furman* held that "in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant." [Citation omitted.] But as we made clear in *Gregg* [*v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)], so long as *the class of murderers subject to capital punishment* is narrowed, there is no constitutional infirmity in a procedure that allows a jury to recommend mercy based on the mitigating evidence introduced by a defendant. [Emphasis added.]

\*　\*　\*　\*　\*　\*

"In contrast to the carefully defined standards that must narrow a sentencer's discretion to *impose* the death sentence, the Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence." [Citation omitted. Emphasis in original.] Indeed, it is precisely because the punishment should be directly related to the personal culpability of the defendant that the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense.

*Penry, supra.* Hence, because the class of murderers subject to the death penalty is already narrowed before a jury ever reaches the 37.071 § 2(e) instruction, then no constitutional infirmity exists in giving the issue. Indeed, once the sentencer has found that the defendant is a member of the class made eligible for the death penalty, it may be given "unbridled discretion" in determining whether the death penalty should be imposed. *Tuilaepa v. California,* 512 U.S. 967, 979, 114 S.Ct. 2630, 2639, 129 L.Ed.2d 750 (1994).

---

4. *See* point of error nine, *supra.*

■ Appellant further alleges that the inability to review the sufficiency of the evidence in regard to the mitigation instruction renders our capital sentencing scheme unconstitutional. We disagree. In *Colella*, 915 S.W.2d at 845, we declined to perform a sufficiency review of an appellant's mitigating evidence. In fact, because of the subjectivity involved in the consideration of mitigating evidence, an appellate review of the jury's answer would merely amount to an exercise in speculation. However, we do not believe that this renders that section of the statute unconstitutional. Indeed, as the above-quoted passage from *Penry* suggests, the Constitution *requires* a vehicle by which the jury is able to consider and give effect to the mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime. *Penry, supra; see also Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). Since Article 37.071 § 2(e) is a codification of the Supreme Court's edicts, it reflects that constitutional requirement. We refuse to hold that what is constitutionally required is unconstitutional merely because it cannot be reviewed for sufficiency.

■ In *Tuilaepa*, 512 U.S. at 976–978, 114 S.Ct. at 2638–39, the petitioners suggested that the California statute in issue was flawed because it did not instruct the sentencer how to weigh any of the facts it found in deciding upon the ultimate sentence. The Court then reiterated that a capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision and proceeded to give a variety of examples.

\* In *California v. Ramos* [463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171] the Court upheld an instruction informing the jury that the Governor had the power to commute life sentences and stated that "the fact that the jury is given no specific guidance on how the commutation factor is to figure into its determination presents no constitutional problem." [Citation omitted.]

\* In *Proffitt v. Florida* [428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913] the Court upheld the Florida capital sentencing scheme even though "the various factors to be considered by the sentencing authorities [did] not have numerical weights assigned to them." [Citation omitted.]

\* In *Gregg v. Georgia* [428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859] the Court "approved Georgia's capital sentencing statute even though it clearly did not channel the jury's discretion by enunciating specific standards to guide the jury's consideration of aggravating and mitigating circumstances." [Citation omitted.] The Court also rejected an objection "to the wide scope of evidence and argument" allowed at sentencing hearings.

*Tuilaepa, supra.* In sum, and as previously stated, the Supreme Court held that, once the jury finds that the defendant falls within the legislatively defined category of persons *eligible* for the death penalty, the sentencer may be given even "unbridled discretion" in determining whether the death penalty should be imposed. *Id.* It follows from this that an attempt to review such "unbridled discretion" would not only place us in the position of a thirteenth juror attempting to objectively review what jurors have subjectively decided, but may, in fact, *result* in arbitrary limits to the jury's wide discretion which would be a violation of the Constitution. Given the analysis in *Tuilaepa*, we conclude that the inability to review Article 37.071 § 2(e) does not render it unconstitutional. Points of error eleven and twelve are overruled.

■ In point thirteen, appellant avers that Article 37.071 § 2(e) is facially unconstitutional because it does not assign a burden of proof or persuasion and also, because it fails to set a standard of proof. In instances where mitigating evidence is presented, all that is constitutionally required is a vehicle by which the jury can consider and give effect to the mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime. *Barnes v. State*, 876 S.W.2d 316, 329 (Tex.Crim.App.), *cert. denied*, 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). Further-

more, a capital sentencer need not be instructed how to weigh any particular mitigating fact in the capital sentencing decision. *Tuilaepa, supra.* The absence of an explicit assignment of the burden of proof or the burden of persuasion or a set standard of proof does not render Article 37.071 § 2(e) unconstitutional. *See also Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Point of error thirteen is overruled.

■ Appellant alleges in points fourteen and fifteen that the death penalty as presently administered in Texas is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, § 13 of the Texas Constitution. In point fourteen, appellant adopts Justice Blackmun's arguments in his dissenting opinion on the denial of certiorari in *Callins v. Collins,* 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994), in support of his argument that capital punishment is violative of the United States Constitution. Justice Blackmun's basic argument is that the capital sentencing procedures are unconstitutional because they are produced by paradoxical commands: allowing the jury to consider all types of relevant mitigating evidence, while, at the same time, requiring "structured discretion" in sentencing.

Appellant's reliance on Justice Blackmun's dissenting opinion is misplaced. As we set out in points of error eleven and twelve, *supra,* the Supreme Court recently reiterated that, once the jury finds that the defendant falls within the legislatively defined category of persons *eligible* for the death penalty, the sentencer may be given "unbridled discretion" in determining whether the death penalty should be imposed. *Tuilaepa v. California,* 512 U.S. 967, 979, 114 S.Ct. 2630, 2639, 129 L.Ed.2d 750 (1994). This scheme does not create the paradoxical commands of concern to Justice Blackmun. Furthermore, our statutory scheme has not radically changed from the version upheld in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950,

49 L.Ed.2d 929 (1976), except to incorporate the dictates of *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). As such, we hold that our capital murder scheme does not amount to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Point fourteen is overruled.

■ In point fifteen, appellant remarks that this Court has said that it can and should interpret the Texas Constitution in a more expansive manner than the federal constitution and cites us to several cases for this proposition. *See Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991). He then notes that the Texas Constitution proscribes "cruel *or* unusual punishments" while the Eighth Amendment prohibits "cruel *and* unusual punishments." Without further substantive citation or authority, appellant claims we should consider this point separately and hold his claim meritorious. This we decline to do. We consider this point inadequately briefed and presenting nothing for our review. Tex.R.App. Proc. 74(f). Point of error fifteen is overruled.

Finally, appellant asserts in point sixteen that Article 37.071 § 2(a) [5] which prohibits the judge and the parties from telling a juror of the effect of a failure of the jury to agree violates the Eighth and Fourteenth Amendments to the United States Constitution. Texas Code of Criminal Procedure Article 37.071 § 2(a) (as amended by the 1991 Legislature) is the same as the older Article 37.071(g) (Vernon 1990) with only minor changes. We have previously addressed and rejected constitutional challenges to prior Article 37.071(g) on numerous occasions. *Rousseau v. State,* 855 S.W.2d 666, 686–87 (Tex. Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Felder v. State,* 848 S.W.2d 85, 101 (Tex.Crim.App. 1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Davis v. State,* 782 S.W.2d 211, 221–22 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). We hold that the same

---

**5.** The pertinent part of Article 37.071 § 2(a) reads:

The court, the attorney representing the state, the defendant, or the defendant's counsel may

not inform a juror or a prospective juror of the effect of a failure of a jury to agree on issues submitted under Subsection (c) or (e) of this article.

analysis applies to the new statute and appellant has given us no reason to revisit this issue. Point of error sixteen is overruled.

Finding no reversible error, we affirm the judgment of the trial court.

McCORMICK, P.J., concurs in the result.

CLINTON, J., dissents.

WHITE and MALONEY, JJ., not participating.

BAIRD, J., concurs. For the reasons stated in *Morris v. State,* 940 S.W.2d 610, —— (Tex.Cr.App.1996) (Baird, J., dissenting), I disagree with the treatment of appellant's point of error twelve. Consequently, I join only the judgment of the Court.

OVERSTREET, Judge, dissenting.

I dissent to the majority's discussion of points one through four regarding the trial court's refusal to instruct the jury about appellant's parole ineligibility. The majority maintains that the trial court did not err when it refused to instruct the jury (at appellant's request) that appellant would be parole ineligible until he had served 35 calendar years in prison. The majority relies on *Smith v. State,* 898 S.W.2d 838 (plurality opinion) (Tex.Cr.App.), *cert. denied* —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995) and *Jones v. State,* 843 S.W.2d 487 (Tex.Cr.App.1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993) in holding that parole is "traditionally not a matter for jury consideration in a Texas capital murder trial." Op. at 594.

I have repeatedly insisted that a capital murder defendant's parole ineligibility for the statutory number of years associated with a life sentence should be presented to the jury. *See Broxton v. State,* 909 S.W.2d 912 (Tex.Cr.App.1995) (Overstreet, J., dissenting), *Willingham v. State,* 897 S.W.2d 351 (Tex.Cr.App.1995) (Overstreet, J., dissenting), *Rhoades v. State,* 934 S.W.2d 113 (Tex.Cr.App.1996)(Overstreet, J., dissenting). It is my strong belief that juries should be presented with all relevant information as it pertains to the future dangerousness and mitigation special issues. Relevant information includes the defendant's parole eligibility or ineligibility. In *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the Supreme Court held that the sentencing jury must be informed that a defendant is ineligible for parole where future dangerousness is at issue and the defendant is ineligible for parole. To permit otherwise would violate the defendant's due process rights. *Id.*

This Court, however, has limited the application of *Simmons* and made what I believe to be irrelevant distinctions. In particular, this Court chose to limit the application of *Simmons* by concluding that it did not extend to defendants facing life imprisonment with the possibility of parole. *Smith, supra.* Since Texas does not have life without parole, the Court concluded that the trial court's denial of an instruction regarding parole is not a due process violation under the U.S. Constitution nor a due course of law violation under the Texas Constitution. *Smith, supra.*

The problem with this rationale is that it overlooks the underlying reasoning in *Simmons.* In *Simmons,* the Supreme Court emphasized the fact that juries are often misled or uninformed about parole as it relates to a capital murder case and that this "misunderstanding pervade[s] the jury's deliberations" and "create[s] a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration." *Simmons,* 512 U.S. at 161, 114 S.Ct. at 2193. As a result, the jury is apt to choose death because they fear the defendant may be paroled after a short period of time and would thus be a future danger to society.

Future danger to society is the special issue jurors are trying to decide and in order for them to make a determination regarding whether the defendant would be a future danger to society they must understand and have knowledge of two concepts: future dangerousness and society. Specifically, the jury is attempting to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society[.]" Art. 37.071 § 2(b), V.A.C.C.P. Thus,

future dangerousness means appellant is inclined to commit future acts of violence that puts society or members thereof at risk.

"Society" presents a challenge because the term in Texas has been held to include free citizens as well as inmates. *Jones v. State,* 843 S.W.2d 487, 495 (Tex.Cr.App.1992), *cert.denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). However, no instruction regarding the definition of society is required and is not given. As such, the jury is forced to rely on the "ordinary meaning" of society which usually encompasses only free citizens. *Penry v. State,* 691 S.W.2d 636, 653 (Tex.Cr.App.1985). Based upon the ordinary meaning, the jury considers free society when determining the special issue of future dangerousness. This being the case, it would seem logical to inform the jury that society refers to free citizens as well as prison inmates. In order then for a jury to weigh the risk to free citizens, the courts should inform the jury upon request that a capital murder defendant is parole ineligible for many years. Such an instruction is not barred by the constitution and is even allowed in noncapital cases.[1] Therefore, it would be fair and reasonable to allow such an instruction so that the jury may make an informed decision based on accurate information on a matter involving life versus death.

It is for these reasons that I respectfully dissent to the majority's disposition of appellant's points of error one through four.

---

**1.** I add that many courts have given the instructions in Texas. *See Rhoades v. State, supra* (dissenting opinion by Overstreet, J.)