

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00250-CR

**DONTAY DENON THOMAS,**

           **Appellant**

 **v.**

**THE STATE OF TEXAS,**

           **Appellee**

---

**From the 85th District Court
Brazos County, Texas
Trial Court No. 10-01143-CRF-85**

---

## MEMORANDUM OPINION

---

A jury found Appellant Dontay Thomas guilty of the offenses of manufacture or delivery of a controlled substance, cocaine, one gram or more but less than four grams, and possession of marihuana, five pounds or less but more than four ounces. The trial court assessed Thomas's punishment, enhanced by two prior felony convictions, at twenty-seven and twenty years' confinement respectively. This appeal ensued.

**Motion to Suppress**

In his first issue, Thomas contends that the trial court erred in denying his motion to suppress because the initial traffic stop, which then led to the search of his vehicle and his arrest, was not lawful.

The relevant evidence presented at the hearing on Thomas's motion to suppress was as follows: On the evening of December 16, 2009, Bryan Police Officer Britton Guss was on patrol with his partner Officer Brady Rocket when Officer Randell Hall radioed them that he had seen a vehicle that had run from Guss and Hall a few days earlier. Guss testified that, following Hall's directions, he and Rocket found the vehicle and followed it for about a half mile before making a traffic stop. When initially asked by the prosecutor what the basis of the stop was, Guss replied, "The vehicle failed to signal its left-hand turn within a hundred feet." Guss then further explained that Thomas, the driver of the vehicle, did signal but that he only signaled "just prior or during his turn," which is a traffic violation. When asked how many feet there were between Thomas's activating his turn signal and turning, Guss replied that it was "0 [zero] feet. He was in the process of turning when he signaled." The in-car video recording was also admitted, but Guss stated that he had a better vantage point inside his vehicle that night than can be seen on the video. Later, when watching the video, Guss stated that one can see at least two blinks of the turn signal before the vehicle turned but that whether the vehicle signaled as it was turning or a few feet before it turned, it still failed to signal the required one hundred feet before the turn.

Rocket testified that after he and Guss had pulled in behind Thomas's car, the vehicle "failed to signal within a hundred feet" of making a left-hand turn, which is a traffic violation. Rocket explained that the vehicle did signal but that it "[w]asn't within the required distance." When asked on cross-examination when the blinker turned on for the left-hand turn, Rocket replied, "Almost immediately at the turn. Probably within 1 to 2 feet approximately of the actual turn." On the other hand, Thomas testified that he knew the police were following him that evening and that he turned on his signal more than one hundred feet from the turn where Guss and Rocket claimed he failed to properly signal.

The trial court denied Thomas's motion to suppress and entered findings of fact and conclusions of law. The trial court determined that Guss's and Rocket's testimony was credible and reliable but that Thomas's testimony was not. The trial court found that, before the stop, Thomas "signaled less than one-hundred feet before turning." The trial court therefore concluded that Thomas committed a violation of section 545.104(b) of the Transportation Code in Guss's and Rocket's presence and the officers had "probable cause" to stop the vehicle Thomas was driving.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their

testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *Kelly v. State*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

Transportation Code section 545.104(b) states: "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b) (West

2011).  Thomas argues that the statute does not say "failure to signal within 100 feet of a turn," and, therefore, the trial court erred by concluding that he committed a violation of section 545.104(b) by signaling less than one-hundred feet before turning.

An effort should be made to reconcile conflicts in findings of fact.  *See Grossnickle v. Grossnickle*, 935 S.W.2d 830, 841 (Tex. App.—Texarkana 1996, writ denied).  The same rule is applied to conflicts between findings of fact and conclusions of law.  *See id.*  And when two possible interpretations exist, the interpretation should be chosen that will harmonize the judgment with the findings of fact and conclusions of law upon which it is based.  *See id.*

The trial court's findings of fact, conclusions of law, and ruling denying Thomas's motion to suppress can be reconciled here by interpreting the finding that, before the stop, Thomas "signaled less than one-hundred feet before turning" to mean that, before the stop, Thomas first activated his blinker less than one-hundred feet before turning.  The evidence, viewed in the light most favorable to the trial court's ruling, supports this finding.  And if Thomas first activated his blinker *within* the one-hundred feet before turning, then he could not have been signaling continuously for the *entire* last one hundred feet of the vehicle's movement before the turn, as required by section 545.104(b).  *See* TEX. TRANSP. CODE ANN. § 545.104(b).  We thus conclude that the trial court did not err in denying Thomas's motion to suppress, and we overrule his first issue.

## Jury Instruction

In his second issue, Thomas contends that the trial court abused its discretion in denying his request for a jury charge instruction under Article 38.23(a), which provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). The three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under Article 38.23(a) are as follows:

(1)   The evidence heard by the jury must raise an issue of fact;

(2)   The evidence on that fact must be affirmatively contested; and

(3)   That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Id.* at 510.

To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into

question. *Id.* at 513. In other words, a cross examiner cannot create a factual dispute for purposes of an Article 38.23(a) instruction merely by his questions or argument. *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008); *Madden*, 242 S.W.3d at 514. It is only the answers that are evidence and may create a dispute. *Madden*, 242 S.W.3d at 514.

The relevant evidence presented at trial, as opposed to the suppression hearing, was as follows: Officer Guss testified that on the evening of December 16, 2009, he and Officer Rocket were on patrol when Officer Hall radioed them that he had seen a vehicle that had evaded an attempted traffic stop by Guss and Hall a few days earlier. Following Hall's directions, Guss and Rocket found the vehicle and followed it for about a half mile when Guss observed the vehicle make a left-hand turn without "signal[ing] with its turn signal indicator a hundred feet from the intersection -- from the turn," which is a violation of the traffic code. Guss explained that Thomas, the driver of the vehicle, did signal but that he turned on his signal "just prior if not while he was turning," which is not the distance required by law. Guss and Rocket therefore initiated a traffic stop.

Guss stated that once he and Rocket had made the stop, Rocket approached the driver's side of the vehicle while he approached the passenger's side. Rocket identified Thomas and returned to the patrol car to run his information through dispatch. At that time, Hall and Officer Casey Horsley arrived. Hall approached the driver's side of the vehicle and began talking to Thomas. Guss then observed Thomas lower his head in a defeated manner, nod, and begin to open the center console of the car.

Guss testified that Horsley then detained Thomas while he, Hall, and Rocket searched the car. On cross-examination, Guss stated that he did not smell marijuana outside the vehicle but that he did smell marijuana when he was searching the car. He did not recall whether it was the smell of burning marijuana or fresh marijuana. The search of the vehicle ultimately revealed no drug paraphernalia, but "a slab or partial cookie of crack cocaine" was found in a tray in the center console of the car. A plastic bag containing marijuana was found underneath the tray in the console, and a crack rock was found under the driver's seat of the car. Jeffrey Keverline, a controlled substance analyst for the Texas Department of Public Safety Crime Laboratory in Austin, testified that the "cookie" of crack cocaine weighed 1.50 grams, the crack rock weighed 0.06 grams, and both did in fact contain cocaine.

Hall testified that on the night of December 16, 2009, he and Horsley were patrolling when he saw a vehicle that had evaded him and Guss several days earlier. He notified Guss and Rocket that he had spotted the vehicle and then began following it until Guss and Rocket were able to locate the vehicle and begin following. Once Guss and Rocket had stopped the vehicle, Hall and Horsley went to that location. Hall approached the driver's side. He stated that he could smell the odor of burnt marijuana emanating from the interior of the vehicle through the open driver's side window. Hall asked Thomas, the driver, if there were any narcotics in the vehicle, specifically marijuana. Thomas put his head down, "kind of nodded yes," and tried to open the center console. At that time, Hall had Thomas exit the vehicle and placed him in handcuffs.

Hall then helped search the vehicle. He stated that as soon as he opened the center console, he found a "couple gram piece of crack cocaine inside a plastic bag there in plain view." During the search, the officers also located another smaller crack rock underneath the driver's seat and a large amount of marijuana in the car. Hall later weighed the marijuana at 8.125 ounces or 227.5 grams. A search of Thomas's person also revealed $2,047 in cash, which seemed to Hall like an amount of cash a narcotics dealer would have in his possession.

Rocket testified that on December 16, 2009, he and Guss were alerted by Hall and Horsley about a vehicle that had previously run from Guss and Hall when they had tried to stop it. Rocket and Guss located the vehicle and pulled in behind it. They then stopped the vehicle after it failed to properly signal a left-hand turn. Rocket explained that Thomas, the driver, did signal but not until the actual turn was being made, which was a violation of the Transportation Code.

Rocket stated that once the vehicle was stopped, Guss approached on the passenger's side while he approached the driver's side and identified Thomas, the sole occupant of the car. When Rocket started talking to Thomas, the driver's side window was down, but he did not smell the odor of marijuana coming from the vehicle at that time. Rocket later explained, however, "It was a cold night. I was probably a little stuffed up." Rocket took Thomas's identification and returned to the patrol car to check if the driver's license was valid and if Thomas had any warrants. By that time, Hall and Horsley had arrived, and Rocket saw them getting Thomas out of the car.

Rocket also helped search the vehicle. He stated that once he got inside the vehicle, he started noticing that the smell of marijuana permeated the seats and the carpet. The smell was probably a mixture of burnt and fresh marijuana. The officers found a "cookie" of crack, some marijuana, and a crack rock in the vehicle, but no drug paraphernalia was located in the car.

Horsley also testified that on December 16, 2009, he was patrolling with Hall when Hall noticed a vehicle matching the description of a vehicle that had evaded a traffic stop several days earlier. The officers began to follow the vehicle. They then alerted Guss and Rocket that they were going to pass the vehicle so that the driver of the vehicle, later identified as Thomas, would think that they were not following him anymore and so that Guss and Rocket could then follow the vehicle to see if Thomas made a traffic violation.

Shortly thereafter, Horsley heard on the radio that Guss and Rocket observed a traffic violation and were going to initiate a traffic stop. He and Hall headed to where Guss and Rocket had stopped Thomas. When they arrived, Guss was on the passenger's side of the vehicle, and Rocket was speaking with Thomas through the open driver's side window. Horsley approached Guss to see if he needed any assistance while Rocket took Thomas's driver's license and began to check his information. Hall then stepped around the vehicle to the driver's side window.

At some point, Horsley also stepped around from the passenger's side of the vehicle to the driver's side where Hall was. Horsley stated that as soon as he stepped around to the open driver's side window, he could smell the strong odor of marijuana

coming from inside the car. The odor was a mixture of both burnt and fresh marijuana. Horsley also explained that it was easier for someone on the driver's side to smell the marijuana as opposed to the passenger's side because the passenger side window was closed.

Horsley testified that Hall asked Thomas if there was marijuana in the car. Thomas immediately dropped his head and began to shake it affirmatively, indicating that there were in fact narcotics in the car. Thomas then reached toward the center console of the vehicle, but Hall told him to stop. Horsley then removed Thomas from the vehicle and placed him in handcuffs. Horsley searched Thomas and found over $2,000 (mostly $20 bills) in Thomas's pants' pocket. Horsley suspected that amount of cash was the proceeds from selling narcotics.

In addition to the foregoing testimony, the in-car video recordings from both Hall's and Horsley's patrol car and Guss's and Rocket's patrol car were admitted.

Thomas argues that the trial court erred in denying his request for a jury charge instruction under Article 38.23(a) because the evidence raised contested fact issues as to whether he "did or did not properly signal before his turn, giving Officer Guss reasonable suspicion to stop him, and whether marijuana was or was not smelled at the time of the stop, allowing his continued detention, search of the vehicle, and probable cause to arrest him."

First, regarding the validity of the initial stop, Guss and Rocket both provided unequivocal testimony that they saw Thomas fail to properly signal before the turn. Both officers acknowledged that Thomas signaled but that he signaled just before or as

the turn was being made rather than continuously for not less than the last 100 feet of movement before the turn as required by the Transportation Code. *See* TEX. TRANSP. CODE ANN. § 545.104(b). Although defense counsel attempted to cast doubt on the credibility of the officers' version of events through his cross-examination questions, the officers' testimony did not raise a fact issue that was affirmatively contested.

Thomas argues that, besides the cross-examination of the officers, the in-car video from Guss and Rocket's patrol car affirmatively contested the officers' version of events because it disputed the officers' ability to have witnessed whether he had properly signaled. Faced with the same argument in *Madden*, the court of criminal appeals stated, "Only if the video clearly showed that appellant affirmatively did not do something that [the trooper] said that he did do, and the video clearly would have shown that conduct if it had occurred, would there be some affirmative evidence of a disputed historical fact." *Madden*, 242 S.W.3d at 516. Such is not the case here. The in-car video recording from Guss and Rocket's patrol car shows the officers following Thomas's car. As Thomas's car approaches the turn, the headlights from an oncoming vehicle prevent one from determining whether the car's blinker is signaling. The blinker of Thomas's car only becomes visible once the oncoming vehicle passes Thomas's car, well within 100 feet from the turn, at which time the blinker of Thomas's car blinks two times and the car then makes the turn. Thus, the in-car video recording is not conclusive and does not contradict the officers' testimony. Furthermore, Rocket testified that he possessed a better vantage point of the traffic violation from the patrol car on that night than is shown in the video. Thus, the evidence did not raise an

Thomas v. State                                                                                                                  Page 12

affirmatively contested fact issue as to whether Thomas properly signaled before making the turn.

Likewise, the evidence did not raise an affirmatively contested fact issue regarding whether marijuana was smelled at the time of the stop, allowing for Thomas's continued detention. *See Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd) ("If, during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified."). Hall testified that when he approached the driver's side of the vehicle, he could smell the odor of burnt marijuana emanating through the open window. Horsley also stated that as soon as he stepped around to the open driver's side window, he could smell the odor of marijuana coming from inside the car.

Thomas argues that this evidence is affirmatively contested because Guss testified that he smelled marijuana once he was inside the vehicle but not from outside the vehicle; Guss stated that he found no evidence inside the car related to the smoking of marijuana; and Rocket testified that he did not smell marijuana when he originally approached the driver's side window and talked to Thomas. But Thomas overlooks other testimony in asserting that these statements affirmatively contested the testimony that Hall and Horsley smelled marijuana through the driver's side window. First, although Guss said he did not smell marijuana outside the vehicle, all the officers stated that Guss approached the vehicle on the passenger's side, and Horsley confirmed that the passenger's side window was closed. Second, the absence of drug paraphernalia inside the car does not mean that the smell of burnt marijuana was also absent from the

car. Rocket explained that the smell of the marijuana permeated the seats and the carpet. Finally, although Rocket did not smell marijuana when he originally approached the driver's window and talked to Thomas, he offered an explanation for this when he stated, "It was a cold night. I was probably a little stuffed up." And, like Guss, Rocket testified that once he was inside the vehicle, he did notice the smell of marijuana. Thus, the evidence regarding whether marijuana was smelled at the time of the stop was not affirmatively contested. The evidence was also undisputed that Thomas acknowledged possessing marijuana in response to Hall's question.

We thus conclude that the trial court did not abuse its discretion in denying Thomas's request for a jury charge instruction under Article 38.23(a), and we overrule his second issue.

## Motion to Reopen

In his third issue, Thomas contends that the trial court abused its discretion in denying his motion to reopen the evidence to allow him to testify.

Before resting, defense counsel had the following exchange with the trial court outside the jury's presence:

> [Defense Counsel]: Judge, my next issue depends on whether or not you will grant me part of a jury charge. As part of the jury charge I'd ask for --

> THE COURT: I'm not negotiating with you.

> [Defense Counsel]: Okay. Well, then I'd ask for -- at this time, Judge, we have no evidence.

When the jury returned to the courtroom, the defense then rested without Thomas testifying, and the trial court released the jury for the night. The trial court then held a charge conference. Thomas requested that an Article 38.23 jury instruction be included in the charge. The trial court denied the request.

The next morning, before the jury was charged and arguments of counsel made, defense counsel made the following record with Thomas:

> Q      Dontay, yesterday afternoon the Judge -- around 5:00 o'clock we finished with the jury charge; and I made a request for what's called a 38.23 charge requesting that the Judge include in the instructions to the jury that they disregard some evidence, that they find factually beyond a reasonable doubt that the search was illegal. Do you understand that?
>
> A      Uh-huh.
>
> Q      The Judge denied including that in the charge. You understand that?
>
> A      Uh-huh.
>
> . . . .
>
> Q      When he denied that, it keeps me from arguing that the stop and the search was illegal. You understand that?
>
> A      Yes.
>
> Q      The only way that the Judge can allow that to come in is if there's a factual dispute, and he believes there's not. You understand that?
>
> A      Yes.
>
> Q      My recommendation to you, because he made that ruling late yesterday afternoon at 5:00 o'clock, was, this morning, to make a motion to reopen our case and call you to the stand. You understand that?

A     Yes.

[Defense Counsel]:  And, for the record, I'm relying on 36.02 of the Code of Criminal Procedure.  I have a case Peak [sic] v. State.

Q . . . Now, what I would be asking the Judge to do at this stage in the game would be to allow us to reopen, call you to testify -- and you're present to testify; correct?

A     Yes.

Q     You could testify?

A     Yes.

Q     Correct?  We have not started the final arguments of this case and the charge has not yet been read to the jury.  What I would call you to testify to was that you -- driving that night you did use your turn signal more than a hundred feet continuously before you made the turn; is that right?

A     Yes.

Q     I would call and ask you that do you recall any smell of marijuana in the -- inside or outside the car that day.

A     No.

Q     Do you recall there was no smell of marijuana?  Is that correct?

A     There wasn't.

Q     I would also ask you whether or not you recall when Officer Hall asked you if there was any narcotics or marijuana inside the car did you affirmatively nod your head yes.

A     No.

Q     And I would also ask you did you ever reach for and try and open the center console of that vehicle while the officers were outside your vehicle.

A       No.

[Defense Counsel]:  And, finally, Judge, it's apparent that the motion that I would move is -- the purpose of it is not to frustrate the due administration of justice.

Q . . .  Now, understand everything that we talked about -- you and I discussed this, and my recommendation to you is to make this motion and have you testify; correct?

A       Correct.

Q       You, though, do not want to testify; is that right?

A       Correct.

Q       Understanding that by not testifying you're -- the Judge is going to read the charge as it is right now; correct?

A       Correct.

Q       And we will not be able to argue that the stop was illegal or the search was illegal.  You understand that?  You understand that?

A       Can we back up?

Q       Sure.  What part?  As it is right now we cannot argue that the stop or the search was illegal.  You understand that?

A       I understand that.

Q       What we can argue is knowledge or lack of knowledge that the drugs were -- that you knew about the drugs in the car at this point. You understand that?

A       Correct.

Q       But we cannot argue anything about the stop and the search. And that's why I want you to testify, so there is a -- some sort of factual dispute based on your testimony that you just testified that you would testify to if you were to testify.  You understand that?

A       I understand that.

Q    But you do not wish to testify in this case; is that correct?

A    I might have to testify.

Q    I'm sorry?

A    I might have to testify.

Q    You do want to testify?

A    Yeah.

At that point, Thomas made a motion to reopen his case. The trial court denied the motion, stating:

> Because I am not of a mind to apply 36.02 in a mechanism such as the way that you are asking me to do because what you are doing is getting an advisory ruling from the Court and then coming back and changing your mind afterwards. That is exactly what you have done here. You tried to get the Court to tell you before you made the decision whether or not to testify whether or not I was going to give a 38.23 instruction. I declined to do that. Now you have chosen to try to reopen the case after you know that I'm going to deny the 38.23 instruction, and that is simply a technical mechanism you're trying to use to get an advisory ruling from the Court. That is not due administration of justice. You chose to not testify when the time came. Live with it.

The decision to reopen a case is left to the sound discretion of the trial court. *Thompson v. State*, 480 S.W.2d 624, 629 (Tex. Crim. App. 1972); *Kennerson v. State*, 984 S.W.2d 705, 707 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). Article 36.02 of the Code of Criminal Procedure provides, "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). A "due administration of justice" means that a trial court should reopen

the case if the evidence would materially change the case in the proponent's favor. *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). The proffered evidence must be more than just relevant; it must actually make a difference in the case. *Id.* Among the factors to be considered in determining the materiality of evidence proffered in a request to reopen under article 36.02 are the weight of the evidence, its probative value, the issue upon which it is offered, and whether it is cumulative. *See id.* at 77-79 (noting that such factors were not to be considered under *Vital v. State*, 523 S.W.2d 662 (Tex. Crim. App. 1975) and overruling *Vital*); *see also Birkholz v. State*, 278 S.W.3d 463, 464 (Tex. App.—San Antonio 2009, no pet.) (holding that evidence must actually make a difference in the case and not be cumulative, citing *Peek*).

In this case, Thomas's proffered testimony that there was no smell of marijuana that night would be highly suspect given that marijuana was actually found in the car. And the officers in this case had probable cause to search Thomas's vehicle after detecting the smell of marijuana, even without considering his admission. *See Moulden v. State*, 576 S.W.2d 817, 819-20 (Tex. Crim. App. 1978); *Small v. State*, 977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no pet.). Furthermore, Thomas's proffered testimony would not have introduced facts exculpating him from the offense, such as an innocent explanation for the contraband. Therefore, we hold that the trial court did not abuse its discretion in implicitly ruling that the proffered evidence would not have materially changed the case in Thomas's favor and therefore the trial court did not abuse its discretion in denying Thomas's request to reopen the evidence to permit him to testify.

Moreover, to the extent Thomas is complaining in this issue that the trial court denied him his constitutional right to a fair trial or right to testify, Thomas made no such complaints in the trial court and thus has failed to preserve those constitutional complaints for review. *See* TEX. R. APP. P. 33.1(a). We overrule Thomas's third issue.

**Closing Argument**

In his fourth issue, Thomas contends that the trial court erred in denying his objections to the State's closing argument. Thomas argues that "the State repeatedly tried to shift the State's burden to prove the offense beyond a reasonable doubt onto the defense, and commented multiple times on the failure of the defendant to testify."

We review a trial court's rulings on objections to argument for abuse of discretion. *York v. State*, 258 S.W.3d 712, 717 (Tex. App.—Waco 2008, pet. ref'd). Proper jury argument falls within one of four general areas: (1) summation of evidence; (2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and (4) pleas for law enforcement. *Lagrone v. State*, 942 S.W.2d 602, 619 (Tex. Crim. App. 1997). Jury argument must be extreme or manifestly improper or inject new and harmful facts into evidence to constitute reversible error. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). Furthermore, in most cases, if error occurs, an instruction to disregard will cure any error committed. *Id.*

Thomas first complains of the following portion of the State's argument:

> [Prosecutor]: . . .
> You essentially have to believe that four police officers are lying --

[Defense Counsel]: Judge, I object to that. The State's burden to prove beyond a reasonable doubt -- didn't say they're lying. Just may not believe particular parts of their testimony beyond a reasonable doubt.

THE COURT: Overruled.

A complaint on appeal that differs from the objection before the trial court has not been preserved for our review. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Thomas's objection at trial appears to be that the State's argument mischaracterized his argument. But on appeal Thomas complains that the State's argument attempted to shift the burden of proof onto the defense and commented on his failure to testify. Thomas therefore failed to preserve his complaint for our review because his complaint on appeal does not comport with his objection at trial. *See id.*

Thomas next complains about the following portion of the State's argument:

[Prosecutor]: . . .
And don't you know if four trained officers smell it, that the defendant does? This is not a light odor in a confined space.

[Defense Counsel]: Judge, I object. Not what the evidence shows. At least one officer never said he smelled fresh marijuana.

THE COURT: Overruled.

But again, Thomas failed to preserve his complaint for our review because his complaint on appeal does not comport with his objection at trial. *See id.*

Thomas then complains about the following portion of the State's argument:

[Prosecutor]: . . .
. . . You know -- where is mama to testify that all these people borrow her car? Because her and Dontay are the only drivers just as he told you on the video, just as the video shows. Whether the accused was the operator of the automobile where the contraband was found. Here sole occupant/operator of the automobile. Whether the accused was

found with a large amount of cash at the time of the arrest and whether the conduct of the accused indicated a consciousness of guilt. And if his behavior doesn't indicate a consciousness of guilt, ladies and gentlemen, then I don't know what does.

Intent to deliver. We've got high narcotics area, a large amount of cash -- and at least $1500 of that is in 20-dollar bills consistent with selling crack rocks which value $20. There's nothing over 20-dollar bills. We've got some 10s and 1s, but the majority of that is $20 which tells you what you already know: He's out there selling crack rocks, breaking them off that cookie like officers told you what he was and selling the 20-dollar crack rocks. We've got the dealer amount of cocaine, partial cookie; no drug paraphernalia; five officers' sworn testimony that's consistent -- that it's consistent with dealing based on the totality of the circumstances. And an expert is included in that. And there is nothing to dispute it.

The defense can call witnesses just as the State.

[Defense Counsel]: Object to trying to shift the burden. It's her --

THE COURT: That objection is overruled.

It is a well-settled rule that the State may comment in argument on the failure of a defendant to call competent and material witnesses. *Ellis v. State*, 877 S.W.2d 380, 384-85 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (citing *Carrillo v. State*, 566 S.W.2d 902, 912 (Tex. Crim. App. 1978)). The State may also argue that the reason for such failure is that any such testimony would be unfavorable to the defense. *Id.* We therefore hold that the trial court did not abuse its discretion in overruling Thomas's objection that the State was attempting to shift the burden of proof onto the defense. Moreover, Thomas failed to preserve his complaint that the State commented on his failure to testify because he made no such objection in the trial court. *See* TEX. R. APP. P. 33.1(a).

Thomas next complains about the following portion of the State's argument:

[Prosecutor]: . . .

Where is his -- where is somebody say where is he employed or his paystub?

[Defense Counsel]: Object; she's shifting the burden, trying to get us to put up a defense. It's her burden to prove the case beyond a reasonable doubt.

[Prosecutor]: Judge, they can present any evidence.

[Defense Counsel]: She's also striking at the defendant for not testifying because that would be where that evidence would come from.

THE COURT: To the extent the prosecutor's last comment could be construed to be a comment upon the defendant's failure to testify, I'll instruct the jury that the charge is quite specific that you're not to consider the failure of the defendant to testify in this case as any evidence whatsoever. And I'll instruct you to limit any interpretation of the prosecutor's last comment where it does not include any such reference.

[Defense Counsel]: Ask the jury to disregard.

THE COURT: Otherwise overruled.

Again, because it is a well-settled rule that the State may comment in argument on the failure of a defendant to call competent and material witnesses, we hold that the trial court did not abuse its discretion in overruling Thomas's objection that the State was attempting to shift the burden of proof onto the defense. *See Ellis*, 877 S.W.2d at 384-85. Regarding Thomas's complaint that the State commented on his failure to testify, we presume that the jury followed the trial court's instruction and that the limiting instruction cured any harm. *See Moore v. State*, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994); *Vega v. State*, 255 S.W.3d 87, 105 (Tex. App.—Corpus Christi 2007, no pet.). Thomas states that the instruction was vague and insufficient to cure the harm, but we disagree.

Finally, Thomas complains that the following portion of the State's argument struck him over the shoulders of his defense counsel:

> [Prosecutor]: . . .
> You're to decide this case based on the application paragraph, and anything else that [defense counsel] is asking you to decide it on would be a violation of your oath.
>
> [Defense Counsel]: Objection, Judge; trying to strike at me -- unethical argument. No evidence that I did.
>
> [Prosecutor]: I said if [defense counsel] is requiring you or asking you to decide --
>
> THE COURT: Objection overruled.

Argument that strikes at a defendant over the shoulders of defense counsel is improper. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). But even assuming that the prosecutor's comment was inappropriate, we conclude that Thomas was not harmed by the prosecutor's argument. We overrule Thomas's fourth issue.

## Conclusion

Having overruled all of Thomas's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray dissenting with a note)*
Affirmed
Opinion delivered and filed June 6, 2013
Do not publish
[CRPM]

\*      (Chief Justice Gray dissents.  A separate opinion will not issue but I note that the defense was based on an argument regarding the validity of the stop and resulting suppression of the evidence.  When the defendant's requested 38.23 instruction was denied, purportedly because the evidence necessary to create the factual dispute was determined to not be present, the defendant moved to reopen evidence and made a bill.  The bill, without question, presented testimony that would create the necessary disputed facts to be entitled to the 38.23 instruction in the charge.  Because the trial court denied the defendant's motion to reopen evidence, the record does not present the disputed fact, and the instruction, and therefore the only real defense, was taken from the defendant.  I would hold the trial court abused its discretion in overruling the motion to reopen evidence, that the error was harmful, and remand this proceeding for a new trial.)