**Opinion filed March 14, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00099-CR

_____

## JOSE MANUEL MORA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR47754**

## M E M O R A N D U M   O P I N I O N

Jose Manuel Mora, Appellant, appeals from his conviction for the third-degree felony offense of assault family violence. The jury found the habitual-offender enhancement allegations to be true and assessed Appellant's punishment at confinement for fifty-five years. In three issues on appeal, Appellant contends that (1) the evidence was insufficient to support his conviction, (2) his due process rights were violated because the prosecution failed to prove Appellant's guilt beyond a

reasonable doubt, and (3) the State made improper remarks during closing arguments. We overrule Appellant's three issues and affirm the judgment of the trial court.

*Background Facts*

The grand jury indicted Appellant on one count of assault family violence enhanced with a prior family violence conviction. The indictment alleged that Appellant intentionally and knowingly caused bodily injury to Valerie Rodriguez by pushing Rodriguez out of a motor vehicle, striking Rodriguez with his hands, applying pressure to the neck or throat of Rodriguez with his hands, and kicking and beating Rodriguez. The indictment further alleged that Rodriguez was a member of Appellant's family or household or a person with whom Appellant has had a dating relationship.

At trial, Eva Luna, a communications manager for Midland County's 9-1-1 call center, testified that, on the day of the alleged assault, the center received a call from an individual who identified herself as Valerie Rodriguez. An audio recording of the call was played for the jury. During the call, Rodriguez stated that she had gotten into a fight with her boyfriend and that he had broken her windshield, bit her finger, and hit her. Rodriguez also stated that her boyfriend's name was Manuel Mora.

Raymondo Perez, a Midland police officer, also testified and recounted his conversation with Rodriguez on the day of the offense. Officer Perez explained that, on the day of the offense, he was dispatched to a hotel in reference to an assault. Officer Perez arrived at the hotel roughly five to ten minutes later. Upon arriving, he found Rodriguez crying uncontrollably. After Rodriguez calmed down, Rodriguez explained that she had just been assaulted. Rodriguez told Officer Perez that Appellant had asked her to come pick him up from a residence because he

2

needed to borrow Rodriguez's car. When Rodriguez picked Appellant up, Appellant told her that he would drop her off at her house because he was "going to use the car." However, Rodriguez disagreed and explained that she needed the car to take her child to an appointment. Although they began arguing, they both got into the vehicle and drove off. Shortly after, they pulled into a parking lot where Appellant began to assault Rodriguez. Rodriguez claimed that Appellant struck her in the face, had his hands around her neck, choked her, and eventually pushed her out of the vehicle. After pushing Rodriguez out of the vehicle, Appellant sat in the driver's seat. Because Rodriguez did not want to be left behind, she jumped into the back seat of the vehicle. Appellant began to drive back to the residence that he was picked up from, but stopped in an alley along the way. Appellant exited the vehicle and began punching the windshield. After yelling at Rodriguez, Appellant once again began to assault Rodriguez by grabbing her hair, pulling her to the ground, and kicking her in the stomach. Rodriguez stated that she scratched Appellant's face to get away from him. Rodriguez then got back into the vehicle and drove to the hotel where she called the police.

Officer Perez also testified that his interaction with Rodriguez had been audio and video recorded. A recording of the interaction was played for the jury. Likewise, Officer Perez also testified that he had taken pictures of Rodriguez's injuries and of the damaged car. The photographs were published to the jury; appear to show Rodriguez with multiple bruises, scratches, and marks.

The State also called Valerie Rodriguez to the stand. Rodriguez testified that she had been in a dating relationship with Appellant for a number of years and that they had lived together. However, Rodriguez explained that the relationship had ended because Appellant left her for another woman. Although Rodriguez admitted to placing the 9-1-1 call, she denied that Appellant had assaulted her. Instead,

3

Rodriguez testified that she had gotten into a fight with another woman at a carwash. Rodriguez claimed that she was driving by the carwash when she saw Appellant and the other woman. Rodriguez claimed that she confronted Appellant and the other woman and proceeded to get into a fight with the woman. Rodriguez claimed that her injuries were sustained in that fight and other previous fights. Rodriguez stated that she felt that Appellant took the other woman's side in the alleged fight and therefore decided to make false allegations against Appellant out of anger.

Rodriguez also acknowledged that Appellant called her numerous times while he was in jail awaiting trial. However, Rodriguez denied that Appellant ever directed, intimidated, or otherwise pressured her into testifying falsely at trial. Instead, to explain her recantation, Rodriguez claimed that she "felt bad" about making the false report and had tried multiple times to tell the district attorney's office that Appellant had not assaulted her. Rodriguez admitted that she did not realize that her initial encounter with Officer Perez was recorded.

During the guilt/innocence phase of trial, Larry Shackelford, a crime scene investigator with the Midland Police Department, testified that he had taken an inked impression of Appellant's fingers. Shackelford testified that the fingerprints matched those found on State's Exhibit No. 2—a 2002 judgment of conviction for assault family violence. At the punishment phase of trial, Shackelford testified that Appellant's fingerprints matched those found on several other exhibits—various felony and misdemeanor judgments of conviction, including the two felony convictions used to enhance Appellant's punishment.

After hearing the evidence, the jury found Appellant guilty of the offense of assault family violence enhanced by a prior assault family violence conviction. The jury assessed Appellant's punishment at fifty-five years' confinement, and the trial court sentenced Appellant accordingly. This appeal followed.

*Analysis*

In three issues on appeal, Appellant contends that (1) the evidence was insufficient to support his conviction, (2) Appellant's due process rights were violated, and (3) the State made improper remarks during closing arguments. We disagree.

We address Appellant's first two issues together. In his first issue, Appellant claims that the evidence was insufficient to support his conviction. Similarly, in his second issue, Appellant contends that his due process rights were violated because the prosecution failed to prove Appellant's guilt beyond a reasonable doubt. Appellant argues that, because Rodriguez, the alleged victim, recanted her original claims and testified at trial that Appellant did not assault her, the State failed to prove that Appellant was guilty of the offense beyond a reasonable doubt.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard

accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2018). The offense is elevated to a third-degree felony if it is committed against a person who was a member of the defendant's household or family or one with whom the defendant has had a dating relationship, and the defendant has been convicted previously of an assault involving family violence. *Id.* § 22.01(b)(2)(A); *see* TEX. FAM. CODE ANN. § 71.0021(b) (West Supp. 2018), § 71.003 (West 2014). "Bodily injury" is any physical pain, illness, or impairment of the physical condition. PENAL § 1.07(a)(8). "The existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish 'bodily injury' within the meaning of the statute." *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.). Direct evidence of physical pain, however minor, is sufficient to establish bodily injury. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

Here, Rodriguez testified that she had dated Appellant for a number of years. Likewise, Rodriguez testified that she had suffered injuries in a fight, and photographs of her multiple injuries were submitted into evidence. The jury also heard evidence that Appellant had previously been convicted of an assault involving family violence. Thus, there is no question, and Appellant does not dispute, that (1) Rodriguez and Appellant had a dating relationship, (2) Rodriguez suffered bodily

injury, and (3) Appellant had been previously convicted of assault family violence. Therefore, our analysis turns on whether the evidence was sufficient to show that Appellant intentionally or knowingly caused bodily injury to Rodriguez.

Although Rodriguez testified at trial that Appellant did not assault her and that her injuries were sustained in fights with other persons, the jury was free to disbelieve Rodriguez's recantation and instead believe her original statements heard in the audio and video recordings alleging that Appellant had, in fact, intentionally caused her injuries. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (As factfinder, the jury is entitled to judge the credibility of the witnesses, and it can choose to believe all, some, or none of the testimony presented by the parties.). Thus, we hold that a rational juror could have found the existence of each of the elements of the offense beyond a reasonable doubt. We therefore hold that the evidence was sufficient to find Appellant guilty of the third-degree felony offense of assault family violence. Appellant's due process rights were not violated. We overrule Appellant's first two issues.

In his third issue, Appellant contends that the State's remarks during closing arguments were improper. Specifically, Appellant points to two comments made by the prosecutor: (1) "the alleged victim's 'story' was 'patently unbelievable'" and (2) "the 'credible evidence' says he did it." However, we begin by noting that these complaints have not been preserved for appellate review. In order to preserve closing argument error, the complaining party must make a contemporaneous objection and receive an adverse ruling. TEX. R. APP. P. 33.1(a); *see Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Because Appellant did not object to either remark at trial, Appellant has not preserved error for our review. *See Cockrell*, 933 S.W.2d at 89.

Nonetheless, we have reviewed the record, and we find that the prosecutor did not present improper closing arguments. Proper jury argument generally falls within four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Esquivel v. State*, 180 S.W.3d 689, 692 (Tex. App.—Eastland 2005, no pet.). Counsel is allowed wide latitude to draw inferences from the record, as long as the inferences are reasonable, fair, legitimate, and offered in good faith. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). While a prosecutor generally cannot vouch for the credibility of its own witnesses by giving unsworn testimony, a prosecuting attorney may make arguments as to the truthfulness of a witness's testimony that are based on the evidence presented and reasonable deductions from that evidence. *Ramos v. State*, 419 S.W.2d 359, 368 (Tex. Crim. App. 1967); *Hinojosa v. State*, 433 S.W.3d 742, 763 (Tex. App.—San Antonio 2014, pet. ref'd). Likewise, a "prosecutor can state that he believes a defendant is guilty, if that belief is tied to the evidence." *Clark v. State*, 952 S.W.2d 882, 890 (Tex. App.—Beaumont 1997, no pet.); *see Sikes v. State*, 500 S.W.2d 650, 652 (Tex. Crim. App. 1973); *Yuhl v. State*, 784 S.W.2d 714, 721 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). Moreover, even when an argument exceeds the permissible bounds of these approved areas, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

Here, the prosecutor's two comments were both directly tied to the evidence. *See Clark*, 952 S.W.2d at 890. The prosecutor pointed to the conflicting statements made by Rodriguez before arguing that the evidence showed her recantation was "patently unbelievable." Likewise, the prosecutor summarized the evidence before

surmising that the evidence suggested that Appellant was guilty of the charged offense. We hold that these deductions were not unreasonable, unfair, illegitimate, or offered in bad faith. *See Shannon*, 942 S.W.2d at 597. Furthermore, even if somehow improper, neither remark was so inflammatory as to constitute reversible error. *See McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985). We overrule Appellant's third issue.

*Conclusion*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


March 14, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.